# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1004

_____

Abdul Rahman Hassan,          *
                              *
          Appellant,      *
                              *   Petition for Review of an
        v.              *   Order of the Board of
                              *   Immigration Appeals
John Ashcroft, Attorney General,   *
                              *
          Appellee.      *

_____

Submitted: May 12, 2004
Filed: November 16, 2004

_____

Before LOKEN, Chief Judge, BRIGHT, Circuit Judge, and DORR,[1] District Judge.

_____

DORR, District Judge.

Abdul Rahman Hassan is a citizen of Somalia who entered the United States on or about August 2, 1998 without admission or parole. He petitions for review of an adverse decision of the Board of Immigration Appeals (BIA), which affirmed, without opinion, the decision of an Immigration Judge (IJ). The BIA denied Hassan's application for asylum, withholding of removal, and protection under the Convention Against Torture. Because substantial evidence supports the IJ's findings, we affirm.

---

[1]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri, sitting by designation.

# I. Factual Background

Hassan was born in Mogadishu, Somalia on March 16, 1960. He fled Somalia and lived in Ethiopia and Djibouti before entering the United States in August 1998. On November 20, 1998, the Immigration and Naturalization Service[2] filed a Notice to Appear in immigration court, wherein he was charged with being an alien present in the United States without being admitted or paroled. *See* Immigration and Nationality Act (INA) § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i). Hassan appeared at the hearing, conceded deportability, but sought political asylum, which the immigration judge also considered as a petition for withholding of removal, and protection under the Convention Against Torture. Hassan also requested, in the alternative, voluntary departure.

At the hearing, Hassan testified that he was a member of the Midgan clan in Somalia. Hassan testified that the previous ruler of Somalia, Siad Barre, had elevated the status of the Midgans and provided them patronage. When the Siad Barre government was overthrown, members of other clans began to harass and kill Midgan members, believing them still to be loyal to Siad Barre. Hassan further testified that in January 1991, during the Somali civil war, three men, dressed in military uniforms and members of the ruling Hawiye clan, forcefully entered his home and took him

---

[2] The Homeland Security Act of 2002 transferred functions of the INS to the newly formed Department of Homeland Security. *See generally* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002). Likewise, the Justice Department issued final rules on February 28, 2003, reorganizing Title 8 of the Code of Federal Regulations to comport with the transfer of the functions of INS. *Aliens and Nationality; Homeland Security; Reorganization of Regulations*, 68 Fed. Reg. 10349 (March 5, 2003) (recodifying 8 C.F.R. pts. 1001, 1003, 1101, 1103, 1205, 1208, 1209, 1212, 1216, 1235, 1236, 1238, 1239, 1240, 1241, 1244, 1245, 1246, 1249, 1270, 1274a, 1292, 1337).

into custody, believing Hassan to be a Midgan supporting Siad Barre. During his three months of captivity, Hassan testified, he was denied food, water, and shelter, threatened, and assaulted. He escaped captivity and fled to a refugee camp in Ethiopia. It was there that he learned that, during his captivity, his wife had been killed back in Somalia. Hassan believed that she was killed because she refused to work in a Hawiye hospital, although he could not be sure of the manner or cause of her death. Hassan's younger brother was also killed in Mogadishu by the ruling clan. Hassan was reunited with his children and his mother in Ethiopia. Hassan testified that the remaining members of his family are in refugee camps in nearby African countries or have sought asylum elsewhere.

Also testifying at the hearing was another Somali who had previously been granted asylum, Mohamed Goran. Goran testified that he knew Hassan from a refugee camp in Ethiopia. Goran further stated that Hassan was of the Midgan clan and that Hassan taught Goran's children in the camp.

The Immigration Judge denied Hassan's application for asylum and withholding of removal and request for relief under the Convention Against Torture. The IJ found little evidence supporting Hassan's claim that he was a Midgan. The IJ discounted Mr. Goran's testimony regarding Hassan's clan membership. Even assuming Hassan's Midgan membership, the IJ found that he did not suffer past persecution as defined for asylum purposes. The IJ characterized the violence inflicted upon Hassan as incidental to a civil war rather than being directed at him because of his clan membership.

The IJ also found that Hassan did not have a well-founded fear of future persecution. In the IJ's opinion, Hassan could return to an area of Somalia of relative peace and where Hassan would not suffer persecution. The IJ also cited to the State

Department's Asylum Profile, which indicated that there was no evidence of systematic retaliation against Midgan members, although there might be retaliation against members of the Siad Barre government. The IJ therefore held that Hassan failed to establish the clear probability of persecution or torture if returned to Somalia necessary for withholding of removal. Finally, the ALJ held that, because Hassan had not been continuously physically present in the United States for one year prior to the issuance of the Notice to Appear, he could not be granted voluntary departure. *See* INA § 240B(b)(1)(A), 8 U.S.C. § 1229c(b)(1)(A).

The Bureau of Immigration Affairs affirmed the decision of the IJ without opinion. Hassan now challenges that decision, arguing that he does have a well-founded fear of future persecution based on his membership in the Midgan clan requiring a grant of asylum, that he qualifies for withholding of deportation because he has shown a clear probability that he will face persecution if returned to Somalia, and that he will more likely than not be tortured if removed and so should not be removed pursuant to the Convention Against Torture.

## II. Standard of Review

This Court will affirm the decision of the IJ and the BIA if it is supported by substantial evidence on the administrative record as a whole. *Rife v. Ashcroft*, 374 F.3d 606, 610 (8th Cir. 2004). The petition for review must be denied "if the BIA's finding is supported by 'reasonable, substantial, and probative evidence of the record considered as a whole.'" *Regalado-Garcia v. INS*, 305 F.3d 784, 787 (8th Cir. 2002) (quoting *Menjivar v. INS*, 259 F.3d 940, 941 (8th Cir. 2001) (further quotations and citations omitted)). The BIA's legal determinations are subject to *de novo* review, "'according substantial deference to the [BIA's] interpretation of the statutes and regulations it administers.'" *Regalado-Garcia*, 305 F.3d at 787 (quoting *Tang v. INS*,

223 F.3d 713, 718-19 (8th Cir. 2000)). However, this Court must affirm if substantial evidence supports the decision as a whole, even if substantial evidence may support other alternative holdings. *See Arkansas v. Oklahoma*, 503 U.S. 91, 113, 112 S. Ct. 1046, 1060, 117 L. Ed. 2d 239 (1992) (discussing a court's deference to agency determinations generally). We may not reverse merely because we would have decided the case differently. *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998).

### III. Analysis

#### *A. Asylum*

Section 208 of the Immigration and Nationality Act gives the Attorney General discretion to grant asylum to an alien who is a "refugee." INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). "A 'refugee' is an alien who is unable or unwilling to return to his country of origin 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Rife*, 374 F.3d at 610 (quoting INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A)). If an alien establishes past persecution, he is entitled to a presumption of a well-founded fear of persecution, which the Attorney General may rebut by proving either a fundamental change in circumstances in the petitioner's country of nationality or that the petitioner could reasonably relocate to another part of his country of nationality under all of the circumstances. *Hagi-Salad v. Ashcroft*, 359 F.3d 1044, 1045 (8th Cir. 2004) (quoting 8 C.F.R. § 280.13(b)(1)(i)(A)&(B)). Without proof of past persecution, the petitioner must demonstrate that fear of future persecution is subjectively and objectively reasonable; that is, a petitioner must establish with credible evidence that he genuinely fears persecution and show through credible, direct, and specific evidence that a reasonable person in his position would fear persecution. *Feleke v. INS*, 118 F.3d 594, 598 (8th Cir. 1997).

"An asylum applicant is not obliged to show conclusively why persecution has occurred or may occur." *In Re S- P-*, 21 I. & N. Dec. 486, 489 (BIA 1996). However, there must be some showing that past persecution was on account of one of the five protected grounds. *See id.* at 490 ("[A]n asylum applicant 'bear[s] the burden of establishing facts on which a reasonable person would fear that the danger arises on account of' [one of the five protected grounds]." (quoting *Matter of Fuentes*, 19 I & N Dec. 658, 662 (BIA 1988)); *Fisher v. INS*, 291 F.3d 491, 497 (8th Cir. 2002) (noting that "persecution" under the Act only includes persecution "on account of" one of the categories delineated by the Act). The fear of harm "'arising from civil strife or anarchy'" does not constitute "persecution" for purposes of the Act. *Miranda v. INS*, 139 F.3d 624, 627 (8th Cir. 1998) (quoting *In re Acosta*, 19 I. & N. Dec. 211, 222 (BIA 1985)).

To overturn the IJ's adverse finding that Hassan does not qualify for asylum, Hassan "bears the heavy burden of showing that his evidence 'was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution.'" *Melecio-Saquil v. Ashcroft*, 337 F.3d 983, 986 (8th Cir. 2003) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84, 112 S. Ct. 812, 117 L. Ed. 2d 38 (1992)). In this case, the IJ discounted both that Hassan was a member of the Midgan clan and that he had a well-founded fear of persecution.

Regarding the first issue, the IJ discounted the testimony of Mohamed Hassan Goran, who testified at the hearing regarding Hassan's clan membership. Mr. Goran testified that he recognized Hassan as Midgan because they were both living in an area of a refugee camp near Godey, Ethiopia that Midgans populated. Mr. Goran admitted that one could not determine clan membership by physical appearance or dialect. Mr. Goran also admitted that clan membership could not be determined by the area in which a person lived in Mogadishu, where both he and Hassan were from. Mr. Goran and Hassan testified that membership in the Midgan clan could be

discerned by the job a person held, but Hassan did not hold any of the jobs either person listed. Thus, from the testimony adduced at the hearing, substantial evidence supports the IJ's decision to discount Hassan's claim that he was a member of the Midgan clan.

Even assuming that Hassan is a member of the Midgan clan, the IJ did not err in determining that Hassan did not have a well-founded fear of future persecution if he were returned to Somalia. Regarding past persecution, the IJ found that Hassan was taken from his home in the midst of a civil war, that he was interned because the insurrectionists wanted to ensure no able-bodied men could fight back, and that there was no conclusive evidence to show that the deaths of Hassan's relatives were due to their status. Hassan urges us to arrive at the opposite conclusions from the facts adduced at the hearing—that Hassan's home was confiscated *because he was Midgan*, that he was interned *because he was Midgan*, and members of his family were killed *because they were Midgan.* To do so would ignore other evidence in the record, such as Hassan's testimony that members of the Darod clan were interned with him, that he did not know the nature and manner of his wife's death, and that State Department asylum profiles indicated that there was no automatic correlation between Midgan clan affiliation and danger of persecution.

Even ignoring the other evidence, the assumptions Hassan asks us to accept are still *assumptions*, not *facts*. The IJ drew conclusions from the factual evidence presented before her and made credibility determinations regarding some of the factual assertions. But when viewing the bare facts on the record as a whole, we cannot say that the evidence is not "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Elias-Zacarias*, 502 U.S. at 483-84. Therefore, the IJ's decision regarding Hassan's past persecution must be upheld.

The IJ's decision that Hassan did not suffer past persecution as defined by the relevant statutes and regulations is supported by substantial evidence. Likewise, the IJ's decision that Hassan did not have a well-founded fear of future persecution is also supported by substantial evidence. The IJ used the evidence in the State Department's 1996 *Profile of Asylum Claims*, stating that there was no "automatic correlation between clan affiliation and danger of persecution" toward Midgan clan members unless the individuals had visibly supported the old regime. (R. 325, 329). The IJ is permitted to rely on state department reports regarding the conditions of a country as they relate to a likelihood of future persecution. *Gebrehiwot v. Ashcroft*, 374 F.3d 723, 726 (8th Cir. 2004) (quoting *Navarijo-Barrios v. Ashcroft*, 322 F.3d 561, 564 (8th Cir. 2003) (further quotations omitted)). That, combined with the IJ's reasoning discounting Hassan's past persecution, constitutes substantial evidence that Hassan's fear was not objectively reasonable. The decision of the IJ denying asylum must be affirmed.

## B. Withholding of Removal

Under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), as amended, the Attorney General must withhold from removal an alien if the Attorney General "decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." To qualify for withholding of removal, aliens must show a "clear probability" that they will face persecution in the country to which they will be deported. *Francois v. INS*, 283 F.3d 926, 932-33 (8th Cir. 2002). Because this is a higher standard than that necessary to qualify for asylum, and because substantial evidence supports the IJ's decision to deny asylum, we also affirm the decision of the IJ to deny withholding of removal. *See id.* at 933.

-8-

*C. Convention Against Torture*

Hassan also brings a claim pursuant to the Convention Against Torture[3] to prevent his deportation back to Somalia. The United States was a signatory to the Convention, and the Convention went into effect on November 20, 1994. Article III of the Convention provides that a signatory not "expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture." Foreign Affairs Reform and Restructuring Act of 1998 § 2242(a), Pub. L. No. 105-277, 112 Stat. 2681-822, (Oct. 21, 1998). The provisions of the Convention were implemented by 8 C.F.R. § 208.18. Torture is defined in the regulations as

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as ... punishing him or her for an act he or she or a third person has committed ... when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1). Torture generally does not include judicially imposed sanctions. *Id.* § 208.18(a)(3).

Hassan qualifies for relief under the Convention if he can produce evidence demonstrating that upon his return to Somalia, government actors or those acting in

---

[3] United Nations Convention Against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20 (1988), 1465 U.N.T.S. 85.

an official capacity would more likely than not subject him to torture. *Id.* §§ 208.16(c)(2), 208.18(a)(6)–(8); *Ngure v. Ashcroft*, 367 F.3d 975, 992 (8th Cir. 2004). "In assessing this claim, all evidence relevant to the possibility of future torture should be considered, including, but not limited to: past torture inflicted upon the applicant; the applicant's ability to relocate to another area of the country where torture is unlikely; and gross, flagrant, or mass violations of human rights." *Ngure*, 367 F.3d at 992 (citing 8 C.F.R. § 208.16(c)(3)). As with asylum claims, this Court must review the agency's denial of relief to determine whether the evidence was "so compelling that a reasonable factfinder must have found the alien entitled to relief under the Convention." *Ngure*, 367 F.3d at 992.

Hassan does not point to any specific reasons to demonstrate why he would be subjected to torture, other than the reasons supporting his asylum and withholding of removal claims. Because the IJ properly discounted his credibility regarding the likelihood of persecution Hassan would face by the Hawiye clan, the IJ properly determined that Hassan would not be tortured if returned back to Somalia.

### D. The BIA's Affirmance Without Opinion

In this case, the BIA issued an Affirmance Without Opinion (AWO), a decision by a single board member affirming the IJ's decision on the merits. According to the BIA's regulations, such a determination constitutes the final agency determination. 8 C.F.R. § 3.1(a)(7) (2002), *codified as amended at* 8 C.F.R. § 1003.1(e)(4) (2004). Hassan challenges the use of the AWO method, arguing that his case does not satisfy the criteria set forth for utilization of the procedure. However, we have consistently ruled that the BIA's decision to use the AWO procedure is unreviewable. *See Ngure*, 367 F.3d at 983, 985, 988; *Dominguez v. Ashcroft*, 336 F.3d 678, 680 (8th Cir. 2003). Although this Court has remanded and required that the immigration authority

provide a "comprehensible reason for its decision," *Paramasamy v. Ashcroft*, 295 F.3d 1047, 1050-51 (8th Cir. 2002), such a requirement only exists when the IJ's decision, adopted by the BIA, contains no reason for its decision. *See id.* (noting the IJ's use of "boilerplate demeanor findings" cannot provide an adequate basis for review). In this case, we have found that the IJ did support her decision, and the record gave an adequate basis for review. The BIA's choice to use the streamlined, AWO procedure is unreviewable, and Hassan's challenge to it is denied.

Hassan also challenges the streamlined procedure on due process grounds, simply stating "[d]espite court decisions approving the use of the AWO process generally, due process requires administrative review." *Pet. Br.* at 27. Contrary to Hassan's claim, due process does not require administrative appellate review, and the BIA's AWO procedure does not violate due process. *Hasalla v. Ashcroft*, 367 F.3d 799, 803–04 (8th Cir. 2004), *reh'g and reh'g en banc denied* (July 30, 2004); *Ngure*, 367 F.3d at 980; *Loulou v. Ashcroft*, 354 F.3d 706, 708-09 (8th Cir. 2003), *as amended by* No. 02-3004, slip. op. (8th Cir. Apr. 28, 2004). Hassan's appeal based on the AWO procedure is also denied.

## E. Voluntary Departure

Hassan apparently does not dispute the IJ's determination that Hassan does not meet the statutory qualification for eligibility for voluntary departure. The issue was not presented in the briefing before this Court. It appears undisputed that Hassan was not physically present in the United States for one year immediately preceding the issuance of the Notice to Appear. Therefore, the decision of the IJ to deny voluntary departure is affirmed.

## IV. Conclusion

We find there is substantial evidence supporting the IJ's denial of asylum, withholding of removal, and relief under the Convention Against Torture. We also find that the BIA did not err when implementing the AWO streamlined appeal procedure. Accordingly, we affirm the BIA in all respects and deny Hassan's petition.

_____