# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1233

_____

| | | |
|---|---|---|
| Sihin Hadera Francois, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review of |
| v. | * | an Order of the Immigration |
| | * | and Naturalization Service. |
| Immigration and Naturalization Service, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: November 12, 2001

Filed: March 18, 2002

_____

Before BYE, RICHARD S. ARNOLD and BEAM, Circuit Judges.

_____

BYE, Circuit Judge.

Sihin Hadera Francois, a native and citizen of Eritrea, petitions for review of an order of the Board of Immigration Appeals (BIA) dismissing her appeal from an Immigration Judge's denial of her request for asylum and withholding of deportation. For the reasons stated below, we deny the petition.

# I.

## A. Procedural Background

Francois entered the United States on October 7, 1987, as a nonimmigrant student to attend Brown Institute in Minneapolis, Minnesota. She was authorized to remain in this country until March 23, 1989. On December 8, 1988, however, Francois was placed in deportation proceedings by the filing of an Order to Show Cause with the Immigration Court. The Order charged that Francois was an alien who failed to comply with the conditions of the nonimmigrant status under which she had been admitted to the United States, namely, that she had never attended the Brown Institute.

At a July 13, 1993, hearing Francois admitted the factual allegations contained in the Order and conceded deportability, but requested an opportunity to apply for asylum and a withholding of deportation. At the conclusion of an immigration hearing held on December 16, 1993, an Immigration Judge denied Francois's applications for asylum and withholding of deportation, but granted her voluntary departure. Francois appealed the Immigration Judge's decision to the BIA, and on December 27, 2000, the BIA dismissed her appeal.

## B. Factual Background

Francois contends she was subject to past persecution in Eritrea because of her religious beliefs and political opinion, and that she has a well-founded fear of future persecution if she returns because she is (1) a Christian, (2) a political opponent of the Mengistu regime, and (3) a member of the ELF (Eritrean Liberation Front), an opponent of the EPLF (Eritrean People's Liberation Front), which now rules Eritrea. Francois submitted evidence based on her individual and family experiences in Eritrea.

## 1. Francois's Individual Experiences

Francois belonged to the Catholic Youth Organization (CYO) and was involved in studying the Bible and teaching the Catechism. While attending Asmara University in Eritrea, she distributed pamphlets for the Eritrean Liberation Front (ELF); the last time she distributed pamphlets was in 1986. The ELF was a group that opposed the Marxist Mengistu regime. Francois was prepared to perform two years of government service in exchange for her free education at the university, but the government sent her to study Marxist-Leninist ideology in the Soviet Union for three years along with other Ethiopian students. She refused to cooperate in the study of that ideology because it denied the existence of God and was against her religion.

After her return from the Soviet Union, Francois underwent an interrogation by the Kedele, the local communist party. She told them she refused to cooperate in the study of Marxist-Leninist ideology because of her Catholic beliefs. She was then referred to another level of interrogation, the Keftegne, or Workers' Party, under the Mengistu regime, where she was interrogated every day for two months about her political beliefs in an effort to convince her to embrace their ideology. From there she was referred to Ethiopian military officials who asked her the same questions for a week and showed her pictures of people being tortured and killed. Francois was told that if she did not change her ideology, they were going to kill her father. She was never detained overnight or sent to jail during these interrogations and was allowed to return home every day. When asked if she was involved with the ELF, Francois always responded in the negative.

After these interrogations, Francois was accepted to Hull University in London, but was unable to attend because the Ethiopian government refused to issue her an exit visa. When the Ethiopian government began to imprison members of the CYO, Francois believed her life was in danger so she decided to leave Ethiopia, contacted her brother in the United States, and made plans to come to this country as a student.

-3-

She admitted she never actually attended Brown Institute in Minneapolis because she wanted to study biology not electronics.

A week before the immigration hearing, Francois received a letter from her father in which he related incidents of terrorism and killing of former ELF supporters by former Mengistu sympathizers. In that letter, her father also indicated that one of her sisters was promoted by her employer and her other sister graduated from high school and was awaiting her college entrance exam results.

The Transitional Government of Ethiopia took power and overthrew the Mengistu regime in 1991. Eritrea became independent in 1993 and the new government of Eritrea is neither anti-Catholic nor pro-Marxist, but is dedicated both to democratic reform and freedom of religion. Francois has acknowledged these political changes. She also testified she is not opposed to the new government. She agreed the new government is engaged in reform and that her religious beliefs would not be persecuted. Francois stated she nevertheless fears persecution because the new government is incapable of protecting its own people from Ethiopian terrorists or controlling political violence.

## 2. Francois's Family's Experiences

Francois's father had been a judge on the Supreme High Court in Ethiopia for 44 years, but his duties ended when the Ethiopian government forced him to resign and replaced the court with military tribunals in 1986. He had also attempted to establish a Catholic University and write a newsletter on human rights issues. Francois's father still resides in Eritrea.

Francois's uncle had been a bishop in the Catholic church for 25 years until 1987, when his tenure ended under pressure from the government due to his involvement with the Eritrean independence movement. Her uncle was arrested in

1986 for giving a sermon during the feast of St. Anthony in which he discussed the oppression of the people, and was jailed for a week. He also wrote six or seven books on Catholic theology that were banned by the Ethiopian government.

Francois's oldest brother left Ethiopia in 1976 and presently lives in Germany under refugee status. He left Ethiopia because he was involved with the ELF and the Mengistu government was aware of this affiliation. Government soldiers descended upon his home and questioned his mother at gun point as to his whereabouts. After this incident, he left Eritrea. A second brother left Eritrea in 1986 because he had been forced by Ethiopian soldiers to fight against the Eritrean people. This brother was granted refugee status in the United States. Francois's third brother left Eritrea in 1977 because he was involved in distributing pamphlets for the ELF and several of his friends had been killed. This brother came to the United States in 1981 and was also granted refugee status. A fourth brother was imprisoned by Ethiopian soldiers in 1979 for three years because of his involvement with the ELF. He was released in 1982 and left Ethiopia because his friends started to disappear. This brother died in the Sudan of unknown causes. Francois also has two sisters who still reside in Eritrea.

## II.
### A. Asylum

The Immigration and Nationality Act authorizes the Attorney General, in his discretion, to confer asylum on any refugee. 8 U.S.C. § 1158(a). A refugee is defined as an alien who is unwilling to return to his or her home country because of "(1) past persecution or (2) a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Id. § 1101(a)(42)(A). The "well-founded fear of persecution" standard contains subjective and objective elements. An alien may establish the subjective element with credible testimony that he or she genuinely fears persecution. Ghasemimehr v. INS, 7 F.3d

1389, 1390 (8th Cir. 1993) (internal citations omitted). The objective element requires a showing of credible, direct, and specific evidence that a reasonable person in the alien's position would fear persecution if returned to the alien's native country. Id.

An alien will be presumed to possess a well-founded fear of future persecution if past persecution is established, and the burden then shifts to the Immigration and Naturalization Service (INS) to show by a preponderance of the evidence that "conditions in the applicant's country . . . have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted if he or she were to return." 8 C.F.R. § 208.13(b)(1)(i). Even if the INS carries this burden, "humanitarian asylum" may be granted based on past persecution alone if that persecution was particularly atrocious. See Cigaran v. Heston, 159 F.3d 355, 357 (8th Cir. 1998) (citations omitted).

That BIA found that, even assuming Francois established past persecution, the INS had successfully rebutted the presumption of future prosecution by proving that conditions in Eritrea have changed. The BIA noted the State Department Country Reports for 1995 and 1999 indicate that Eritrea became an independent state in 1993, following an internationally-monitored referendum in which citizens voted overwhelmingly for independence from Ethiopia. It noted that Islam and Christianity are practiced and tolerated widely throughout the country with persons free to worship at the mosque or church of their choice. The BIA further noted that "[w]hen the EPLF assumed power, it summarily expelled Mengistu's soldiers, administrators, and even many Ethiopian citizens who had lived in Eritrea for decades . . . [particularly] Amharas, regarded by most Eritreans as supports [sic] of Mengistu." "The harsh excesses of Marxist dictatorship (under Mengistu) . . . have ended, and . . . Eritrean exiles who had fled Mengistu's brutal rule should now be able to return without reprisals." Additionally, the BIA noted there is "no definitive evidence to

-6-

support the allegation sometimes made that the EPLF now punishes those who supported the ELF."

We review the BIA's denial of asylum for an abuse of discretion, and the factual findings underpinning its refusal to grant asylum under the substantial evidence standard. Manivong v. Dist. Dir., U.S. Dep't. of Justice INS, 164 F.3d 432, 433 (8th Cir. 1999). This means the BIA's factual determinations "must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole." Tang v. INS, 223 F.3d 713, 718 (8th Cir. 2000) (internal citations and quotations omitted). Reversal of the BIA's decision is warranted only if the petitioner shows the evidence was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution. Kratchmarov v. Heston, 172 F.3d 551, 554 (8th Cir. 1999).

After reviewing the evidence, we believe the BIA's factual determinations are supported by substantial evidence—that is, Francois's fear of future persecution was not objectively reasonable. The evidence submitted by Francois to support her claims is based on events that occurred in the mid-1980s under the defunct Mengistu regime. Francois's contentions that she fears persecution on account of her Christianity and political opposition to the Mengistu regime are stale. Francois admits the Eritrean government is currently neither anti-Catholic nor pro-Marxist and is dedicated to democratic reform and freedom of religion. The BIA's determination that Francois's fear of persecution on account of her religious beliefs and political opinion was not well-founded is therefore fully supported by the record.

Francois argues it is inequitable to deny her asylum when two of her brothers have been granted refugee status in the United States under similar facts. During oral argument, we asked the INS to supplement the record with materials pertaining to the grant of refugee status as to these brothers, Gabriel Hadera Francois and Leul-Seghed Hadera Francois. The records show Gabriel's application for refugee status was

approved on September 18, 1981, and Leul-Seghed's application was approved on July 19, 1988. Thus, Francois's brothers were granted refugee status while the oppressive Mengistu regime was still in power—a marked difference from Francois's situation.

All the evidence submitted by Francois, including the experiences of her father, uncle and brothers, with the single exception of a supplemental affidavit dated 1991, pre-dates 1989. Francois has failed to show how these dated events, which occurred under the now defunct Mengistu regime, provide an objectively reasonable basis for a *present* fear of particularized persecution directed at her personally, and on the basis of her political or religious opinions or on the basis of her family's political or religious beliefs. See Nyonzele v. INS, 83 F.3d 975, 981 (8th Cir. 1996) ("Much of Nyonzele's evidence of family persecution (the suspicious deaths of a brother and two cousins) occurred over a decade ago. Nyonzele has not shown why these rather dated events provide an objectively reasonable basis for a present fear of particularized persecution directed at h[im] personally and on the basis of his political opinion . . . or on the basis of h[is] family's political opinions."). Perhaps Francois's fear is subjectively real. But she has produced almost no evidence that her fear is objectively reasonable given the current climate in Eritrea. See Menjivar v. INS, 259 F.3d 940, 941 (8th Cir. 2001).

Although Francois's claims of persecution concern primarily conditions that no longer exist in Eritrea, she does claim the new Eritrean government is incapable of protecting its own people, including ELF supporters, from Ethiopian terrorists or controlling political violence. See Hernandez v. Reno, 258 F.3d 806, 811 n.5 (8th Cir. 2001) (recognizing that harassment by groups the government is unwilling or unable to control can constitute persecution). In support of this claim, Francois relies on a letter she received from her father relating incidents of terrorism and killing of ELF supporters by former Mengistu sympathizers. The BIA, however, relied on information contained in the State Department Country Report for 1995 and

determined Francois's fear of persecution on account of her being an opponent of the EPLF was not well-founded. See Gebru v. INS, 1999 WL 95523, at *3 (4th Cir. Feb. 18, 1999) (finding that the State Department country reports, among other evidence, do not support a finding that members of the ELF are targeted for persecution in Eritrea or Ethiopia). The BIA's determination is bolstered by the fact that Francois's father and two sisters, all of whom still reside in Eritrea, have not been molested by the new government and in fact seem to be prospering under it. Plus, while living in Eritrea, Francois never publicly acknowledged her support for, or affiliation with, the ELF. Based on the record we believe there was substantial evidence to support the BIA's decision.

Francois also contends she is entitled to humanitarian asylum. Citing cases wherein an applicant had been granted humanitarian asylum, the BIA noted the atrocity of the past persecution an applicant must show in order to obtain this type of asylum, including permanent physical and emotional scarring, or a combination of detention, involuntary military service, sleep deprivation, beatings, electric shock, and routine physical torture and psychological abuse. See Matter of Chen, 20 I. & N. Dec. 16 (1989). We believe the BIA properly concluded Francois failed to demonstrate the severe or long-lasting harm akin to what aliens who had been granted asylum based on humanitarian grounds endured in their respective countries.

## B. Withholding of Deportation

The standard for withholding of deportation requires aliens to show a "clear probability" that they will face persecution in the country to which they will be deported. See Kratchmarov, 172 F.3d at 555. This standard is more onerous than the well-founded fear standard for asylum. Id. Having concluded that substantial evidence supports the BIA's denial of Francois's asylum request, we likewise conclude that substantial evidence supports the BIA's denial of Francois's withholding of deportation request.

## C.  Administrative Notice

Francois contends the BIA violated her due process rights by taking administrative notice of the changed conditions in Eritrea.  She also contends the BIA failed to engage in an individualized review of her petition.

We have approved the BIA's use of administrative notice of changed conditions in an alien's home country.  Wojcik v. INS, 951 F.2d 172, 173 (8th Cir. 1991) (agreeing with Seventh and Tenth Circuit decisions approving the BIA's use of administrative notice of changed political conditions).  Due process, however, requires that an alien be given notice of the BIA's intention to take administrative notice, and a sufficient opportunity to respond.  The question here is whether Francois was given notice of the BIA's intention to take administrative notice of changed conditions in Eritrea, and whether she had a sufficient opportunity to respond.  Although Francois was not given notice, she was neither harmed nor prejudiced because the BIA noticed current conditions in Eritrea of which Francois was aware.

Francois testified she did not believe the new government was anti-Catholic or pro-Marxist, and that it is dedicated to democratic reform and religious freedom.  The BIA took administrative notice of these conditions.  Further, the State Department Country Report for 1993 was introduced into evidence during the immigration hearing and was thus part of the administrative record.  See Kapcia v. INS, 944 F.2d 702, 705-06 (10th Cir. 1991) (holding no due process deprivation when immigration judge took notice of change of government at hearing, and petitioners knew of this issue when they appealed to BIA).  Although the BIA took administrative notice of facts contained in a 1995 and 1999 report, the findings contained therein had their genesis in the 1993 report and were not materially different.  Francois therefore had ample opportunity to rebut such evidence during the hearing held before the Immigration Judge, by supplementing the record, and after the BIA's decision by moving to have the record re-opened.  Contrary to her contention that she was denied

the opportunity to respond to the changed conditions in Eritrea, Francois did in fact submit evidence challenging the facts the BIA relied upon and claims the BIA ignored this evidence. The evidence Francois submitted, however, was generated in the mid-1980s, before the Mengistu regime was overthrown and before Eritrea gained its independence. Francois's evidence did not contradict the current conditions in Eritrea of which the BIA took administrative notice. Francois knew this at the immigration hearing, yet failed to submit any additional, recent evidence.

Francois's claim that the BIA failed to engage in an individualized review of her petition is likewise without merit. The BIA noted her testimony that she does not believe the present government of Eritrea is anti-Catholic or pro-Marxist, and referred to the ELF, the movement which Francois supported. The BIA's dismissal of Francois's asylum request was not merely a recitation of administratively-noticed boilerplate changes in the conditions in Eritrea; rather, it reflected a particularized consideration of Francois's case. We have examined Francois's other arguments and have found them to be without merit.

### III.

We conclude substantial evidence supports the BIA's denial of Francois's asylum request, as well as its denial of withholding of deportation. Accordingly, we deny Francois's petition. Furthermore, Francois's November 12, 2001, motion to hold the decision in abeyance or to remand to the BIA is denied. Our decision here is without prejudice to whatever action might be taken on Francois's most recent petition for review.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-