# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2224

_____

|  |  |  |
|---|---|---|
| Besnik Hasalla; Floresha Hasalla; Aida Hasalla, | * * * | |
| Petitioners, | * * | |
| v. | * * | Petition for Review of an Order of the Board of Immigration Appeals. |
| John Ashcroft, Attorney General of the United States, | * * * * | |
| Respondent. | * | |

_____

Submitted: April 15, 2004

Filed: May 12, 2004

_____

Before MORRIS SHEPPARD ARNOLD, MAGILL, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Besnik and Floresha Hasalla seek political asylum, withholding of removal, and relief under the Convention Against Torture (Convention). The Immigration Judge (IJ) denied relief on the grounds that they failed to prove a well founded fear of persecution because of political opinion, religion, or membership in a protected social group or entitlement to relief under the Convention. The Board of Immigration Appeals (Board) affirmed the IJ's order without opinion. The Hasallas petition for review.

Besnik and Floresha Hasalla, husband and wife, are citizens of Albania. They are members of the Christian Orthodox religion and the Democratic Party. The Hasallas have two daughters, Gentiana, who was granted asylum in 1998, and Aida, who is presently seeking asylum but whose claim has been remanded to the Board.[1]

Besnik Hasalla was imprisoned from 1982 to 1986 by the Communist government in Albania because of his political beliefs and activities. During those years he was required to perform hard labor. He was also physically abused and denied contact with his family. Although he had been trained as an economist, Besnik only found work as a driver after leaving prison. When Communist rule ended in 1991, both Besnik and Floresha became active in the Democratic Party. The Democratic Party came to power nationally in 1992, and Besnik was named commissioner of a land redistribution board. The Socialist Party controlled the local government in Peqin where the Hasallas lived, however, and it won national control in late 1997.

The Hasallas' claims for relief focus principally on several incidents in 1995, 1997, and 1998. In 1995 they received threats against their daughters and their home if Besnik did not end his involvement with the Democratic Party. Besnik took steps to ensure the safety of his family, and the threats were not carried out. In April 1997 Besnik had a public argument with a member of the Socialist Party. Several days later he was shot in the arm by a masked man who called him by name and yelled "dog" at him. During this period Aida Hasalla was being repeatedly harassed and threatened by a Muslim group called the Loyals of Allah who disapproved of her western dress and makeup. One of them pointed a gun at Aida in late 1997 and said that someday Allah would punish her. After that incident Aida and Floresha went to

_____

[1]The Board in turn has remanded her case to the IJ to determine whether she is eligible for adjustment of status. A final order of removal is apparently no longer pending in her case.

stay with Besnik's mother in Kosovo. In July 1998 three men broke into the Hasalla home and asked Besnik where his wife and daughter were, tied him to a chair, and beat him. Besnik and Floresha decided to flee to the United States.

Besnik and Floresha Hasalla arrived in the United States on October 18 and December 6, 1998, respectively. Besnik Hasalla filed an application for asylum and withholding of removal and included Floresha as a derivative applicant. They were issued notices to appear May 5, 2000 and charged with entering the United States without valid entry documents. The Hasallas conceded removability and renewed their application for asylum, withholding of removal, and relief under the Convention. Their December 5, 2000 hearing before the IJ included testimony by Besnik and Aida Hasalla and a tender of testimony on behalf of Floresha.

The IJ reviewed the testimony and evidence in the record and found the Hasallas credible. The IJ found that Besnik's arrest and incarceration under the Communist regime in Albania evidenced past persecution on account of political opinion, but that conditions in the country had changed and the Communist Party was no longer in control. The Democratic Party was in power from 1992 to December 1997, and the Socialist Party controlled the government from December 1997 through the December 2000 hearing. The IJ observed, "These are clearly not the same Governments, with the same political philosophy that were in power at the time the respondent was incarcerated from 1982 to 1986. . . . the country conditions are fundamentally changed." The IJ concluded from the evidence that Besnik Hasalla had not met his burden of demonstrating a well founded fear of future persecution. See In re N-M-A-, 22 I. & N. Dec. 312 (B.I.A. 1998) (asylum applicant has burden to show new source if there is no longer a well founded fear of persecution from original source).

The IJ evaluated the 1995, 1997, and 1998 incidents about which Besnik had testified. The IJ observed that the threats reported in 1995 must be viewed with

"some skepticism" because the political conditions at that time would have provided Besnik "alternatives in relying upon the authorities to protect him." The claim that Besnik had been shot in the arm in April 1997 because of an argument with a Socialist Party member also had to be considered "with a certain degree of skepticism." The IJ found that Besnik had not established a cause and effect relationship between the two events, for there was no evidence from which to find that the assailant was the same person with whom Besnik had a dispute or that he was shot on account of his political opinion. The IJ found that the 1998 intrusion into Besnik's house was an isolated incident. Although the government had not prevented the intrusion, Besnik had not shown that it was unwilling to protect him. The IJ stated that "the asylum laws are not meant to remedy every government deficiency" and that the circumstances did not "make out a claim of persecution because of religion or because of political opinion."

Based on these findings and conclusions, the IJ denied Besnik and Floresha Hasalla asylum and withholding of removal because they had not established a well founded fear of persecution. The IJ also found that they had not established the requisite likelihood that they would be tortured if returned to Albania so their request for protection under the Convention was denied. The IJ granted voluntary departure.

The Hasallas appealed to the Board, which affirmed without opinion on April 15, 2003. The Hasallas timely filed a petition for review. They challenge the Board's decision to streamline the case by affirming summarily without opinion, especially in light of the remand of Aida's case. They also contend that the IJ erred in finding they would not face a well founded fear of persecution in Albania based on their political beliefs, membership in a particular social group, or religion. The Attorney General counters that the Board's decision to streamline was appropriate and that substantial evidence supports the IJ's findings that the Hasallas are ineligible for relief. Since the Board affirmed without opinion, we treat the IJ's decision as the

agency's final determination for review.  See Dominguez v. Ashcroft, 336 F.3d 678, 679 n.1 (8th Cir. 2003).

We review the denial of asylum and withholding of removal for an abuse of discretion, and use the substantial evidence standard for underlying factual findings. See Francois v. INS, 283 F.3d 926, 931 (8th Cir. 2002).  The IJ's factual determinations must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole.  Id. (citing Tang v. INS, 223 F.3d 713, 718 (8th Cir. 2000)).  We are not at liberty to reweigh the evidence.  Feleke v. INS, 118 F.3d 594, 598 (8th Cir. 1997).  Reversal of the IJ's decision is warranted only if the petitioner shows the evidence was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution.  See INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992); Kratchmarov v. Heston, 172 F.3d 551, 554 (8th Cir. 1999).

The Attorney General may confer asylum on any refugee.  8 U.S.C. § 1158(b). A refugee is defined in the statute as an alien who is unwilling to return to his or her home country because of a well founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A).  If past persecution is established, an alien will be presumed to possess a well founded fear of future persecution and the burden shifts to the government to show by a preponderance of the evidence that conditions in the applicant's country have changed to such an extent that the applicant no longer has a well founded fear of  being persecuted if he or she were to return.  See  8  C.F.R. § 1208.13(b)(1)(i) (2003); Perinpanathan v. INS, 310 F.3d 594, 598 (8th Cir. 2002). The standard for mandatory withholding of removal under 8 U.S.C. § 1231(b)(3) is more demanding than that of asylum.  The alien must show a "clear probability" that he or she will face persecution in the country to which he or she will be deported. See Regalado-Garcia v. INS, 305 F.3d 784, 788 (8th Cir. 2002).

The Hasallas contend that their case was impermissibly streamlined because it does not meet the requirements for streamlining under 8 C.F.R. § 1003.1(e)(4) (2003). They allege that the IJ's decision was incorrect and prejudicial and that the case involves legal and factual issues of a substantial nature that require more considered review than the streamlining procedures allow. They argue at a minimum that the case should be remanded to the Board for a full three member review.

The regulations permit an individual Board member to affirm the IJ's decision without opinion when that member decides that the result was correct, that any errors were harmless or immaterial, and that the issue on appeal is squarely controlled by precedent and does not involve a novel factual situation or that the factual and legal questions raised are not substantial enough to warrant a written opinion. See 8 C.F.R. § 1003.1(e)(4); Ortiz v. Ashcroft, 361 F.3d 480, 481-82 (8th Cir. 2004) (discussing similar streamlining regulation 8 C.F.R. § 3.1(a)(7) in effect in 2002). We have held that a streamlined review process is not unconstitutional. See Nyama v. Ashcroft, 357 F.3d 812, 817 (8th Cir. 2004) (citing Loulou v. Ashcroft, 354 F.3d 706, 708-09 (8th Cir. 2003) (amended Apr. 28, 2004)). See also Belbruno v. Ashcroft, 362 F.3d 272, 282-83 (4th Cir. 2004) (listing federal appellate courts which have concluded that the Board's streamlining regulations do not violate Fifth Amendment due process rights). The Hasallas have no constitutional or statutory right to an administrative appeal and no regulatory right to a full opinion by the Board. See Loulou, 354 F.3d at 708. When the Board summarily affirms, the federal court retains the ability to review the IJ's decision directly. Id.

The Hasallas contend that the IJ erred because the record evidence compels a finding that they have a well founded fear of persecution if returned to Albania. The IJ determined that, even though Besnik Hasalla was subject to past persecution under the Communist regime, the Attorney General established that conditions in Albania have changed so that Besnik no longer has a well founded fear of persecution on the basis of political opinion. This conclusion has support in the 1997 State Department

Profile of Asylum Claims and Country Conditions Report which indicates "there is no post-Communist tradition of retribution against political leaders and few instances thereof." See Perinpanathan, 310 F.3d at 599 n.1 ("Department of State country conditions reports are persuasive authority for determining whether an asylum-seeker has a well-founded fear of persecution.").

Besnik Hasalla alleged that he was persecuted on account of his political opinion even after the Democratic Party came to power, but the 1995 threats were anonymous and not carried out even though Besnik continued to be involved with the Democratic Party. The fact that the police did not take any action on the anonymous threats does not necessarily mean that the Albanian government was unable or unwilling to control the individuals who made the threats. See Valioukevitch v. INS, 251 F.3d 747, 749 (8th Cir. 2001). The IJ also found that Besnik had not shown that the 1997 shooting resulted from his argument with a Socialist Party member several days earlier. Besnik could not identify who shot him or the motive, and he admitted that just about everyone "had a weapon in their hands."

The IJ could reasonably conclude based on the evidence in the record that these incidents were unrelated and not on account of Besnik's political opinion. In the 1998 Addendum to the Profile of Asylum Claims and Country Conditions, the State Department reported that "Democratic Party members were indeed the victims of numerous attacks and murders, but in Albania's general atmosphere of lawlessness and lax law enforcement, neither culprits nor motives were ever found or confirmed for most of these crimes." The report further noted that "[t]he settling of accounts persists but individuals are rarely targeted for mistreatment on political grounds." Thus, a reasonable factfinder would not have to find a well founded fear of persecution simply because a Democratic Party member has been the victim of an anonymous threat or attack. See Fisher v. INS, 291 F.3d 491, 496 (8th Cir. 2002) (asylum seeker bears the burden of proving persecution based on protected ground).

The Hasallas also allege the IJ erred in not finding a well founded fear of persecution during the period when the Socialist Party was in power. Although some former Communist members became active in the Socialist Party, the IJ found that Besnik had not been politically involved "in such a way that he has attracted the attention of [the Socialist] government, or its supporters." There is nothing in the State Department reports that indicate that the Socialist Party routinely arrests, jails, or persecutes members of the Democratic Party.

The Hasallas allege that the 1998 incident in which men from the Loyals of Allah broke into their home must have been motivated by either politics or religion and that an asylum applicant is not obliged to show conclusively why persecution has occurred or may occur, citing In re S- P-, 21 I. & N. Dec. 486 (B.I.A. 1996). Besnik did not know the individuals or why they were looking for his wife and daughter, however, and the IJ found that the intrusion was an act of "a local gang, a criminal element." Substantial evidence in the record supports the IJ's finding that this incident was not shown to be on account of political opinion, religion, or other protected ground.[2]

The IJ also found that the Hasallas were ineligible for relief under the Convention, and they waived this claim by not including it in their opening brief. See United States v. Brown, 108 F.3d 863, 867 (8th Cir. 1997) (argument not raised in opening brief is not considered without reason for failure to raise earlier).

Accordingly, the petition is denied.

_____

_____

[2]Although the Hasallas assert that they would suffer persecution based on membership in a social group, they failed to develop that claim. As the IJ pointed out, Congress did not intend this category to be an all encompassing residual ground for asylum. See In re R-A-, 22 I. & N. Dec. 906 (B.I.A. 1999).

-8-