# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3146

_____

Mehmet Bardhyl Ruzi,                    *
                                        *
        Petitioner,                     *
                                        *
        v.                              *
                                        *
Alberto R. Gonzales,[1] Attorney        *
General of the United States            *
of America,                             *
                                        *
        Respondent.                     *

_____

No. 03-3147

_____

Petitions for Review of
Orders of the Board of
Immigration Appeals.

Zhaneta Ruzi; Mirta Ruzi,               *
                                        *
        Petitioners,                    *
                                        *
        v.                              *
                                        *
Alberto R. Gonzales, Attorney           *
General of the United States            *
of America,                             *
                                        *
        Respondent.                     *

_____

[1]Alberto Gonzales has been appointed to serve as Attorney General of the United States, and is substituted as respondent pursuant to Federal Rule of Appellate Procedure 43(c)(2).

_____

Submitted: December 15, 2005
Filed: March 24, 2006
_____

Before MELLOY, COLLOTON, and BENTON, Circuit Judges.
_____

BENTON, Circuit Judge.

Mehmet Bardhyl Ruzi, his wife, Zhaneta Ruzi, and his daughter, Mirta Ruzi petition for review of two final orders of the Board of Immigration Appeals ("BIA") denying their applications for asylum and withholding of removal. *See* **8 U.S.C. §§ 1158, 1231(b)(3)**. Having jurisdiction under 8 U.S.C. § 1252, this court affirms.


I.


**A. Procedural Background**


Mehmet Ruzi, a native and citizen of Albania, entered the United States with a 90-day visitor visa authorizing him to remain in the country until April 22, 1996. He overstayed the visa and lived here without authorization, eventually applying for political asylum and withholding of removal in June 1999. An Immigration Judge placed Mehmet in removal proceedings, charging him with overstaying his status.

Zhaneta and Mirta entered the United States from Albania on January 5, 1999, with fraudulent passports. They immediately requested political asylum. Mehmet is a derivative asylum applicant on Zhaneta's application. After passing credible- fear screenings, Zhaneta and Mirta were charged with entering the United States without valid entry documents and by misrepresentation. They admitted these charges before the Immigration Judge, but renewed their requests for asylum, withholding of

-2-

removal, and relief under the Convention Against Torture.  Mehmet's claims were later joined with Zhaneta's and Mirta's before the Immigration Judge, who determined that all three petitioners were ineligible for relief.

## B. Factual Background

Mehmet Ruzi alleges that, before leaving Albania in 1995, he was persecuted by two different political groups – the Socialist Party and the Democratic Party.  He testified that, in 1991, the Socialists began detaining and beating him after he became an active member of the newly-formed Democratic Party.  In January, he was arrested, detained, and beaten for two days by Socialist police officers following a pro-democracy demonstration in Berat.  On March 31, he was again beaten by Socialist police who used clubs and rifle butts to break up a 10-day hunger strike staged by Democrats following election of a Socialist Prime Minister.  Finally, in January 1992, Mehmet was detained by Socialist police while campaigning for the special election of a Prime Minister.  He testified that officers stopped his vehicle, threatened to kill him for "going beyond the limits" with the Democratic Party, and later beat him with clubs and machine gun butts until he was unconscious.  Shortly thereafter, he became chairman of the local chapter of the Democratic Party in Berat.

In November 1994, at a referendum on a new constitution in Albania,  Mehmet was in charge of a local polling unit in Berat.  Several days before the November 6 referendum, Democrats arrived at his polling place and offered him money to buy votes.  Mehmet refused the bribe, saying that he was confident the people in his area would support the referendum.  On November 6, two armed men who said they represented Democratic Party "bosses" arrived at Mehmet's polling place and told him to switch voting boxes to ensure adoption of the new constitution.  Mehmet refused to cooperate.  The men knocked him unconscious, causing head injuries, facial and back bruises, and a fractured right leg.  He was hospitalized for nine days until a friend advised him that he was targeted to be killed by Democratic leaders.

After learning that his name was on the Democratic Party's "extermination list," Mehmet fled to Greece with Zhaneta and Mirta, where they lived for approximately 11 months. Mehmet traveled to Albania to obtain a visitor's visa to the United States, but immediately returned to Greece to await his departure to the United States. In October 1995, he and his family waited in hiding at his mother-in-law's house in Albania, until he left for the United States on October 23.

Zhaneta and Mirta continued to live with her mother in a remote village in Albania. Zhaneta testified that on the night of January 24, 1996, three men broke into the home and demanded to know Mehmet's location. When she did not provide the information, the intruders beat her, causing a miscarriage of her unborn child. Zhaneta and Mirta then moved to her aunt's home in a different Albanian village. Zhaneta testified she was not harmed during the three years she lived there, but that two unknown men stared at Mirta as she played in the yard in late 1998. This incident caused her to believe that Mirta would be kidnapped and sold into the Albanian sex trade (according to her application), or (as she testified later) taken in retribution for Mehmet's disappearance. Additionally, both Zhaneta and Mehmet testified that Mehmet's "political enemies" retaliated in 1994 against his family by beating his father, and in 1997 by shooting his father in the leg and leaving a note in his father's house saying the whole family would be annihilated. Concerned about further retribution, Zhaneta obtained fraudulent passports for herself and Mirta and entered the United States on January 5, 1999.

### C. Agency Proceedings

Reviewing the testimony, the Immigration Judge concluded that Mehmet was barred from political asylum because his application was untimely, as it was not filed

within one year of his arrival in the United States.[2] *See* **8 U.S.C. § 1158(a)(2)(B)**. Because Zhaneta and Mirta were dependent asylum applicants on Mehmet's application, their requests for political asylum were also denied. The Judge then held that none of the three was entitled to withholding of removal or relief under the Convention Against Torture, as they had not established a clear probability of persecution if returned to Albania. The Judge granted Mehmet voluntary departure, but ordered Zhaneta and Mirta immediately removed.

All three appealed to the BIA, which issued two opinions. In the first, the BIA determined that Mehmet was not entitled to withholding of removal, because he did not show a clear probability of persecution if removed to Albania. In the second, the BIA concluded that the Immigration Judge erred in treating Zhaneta and Mirta as dependent asylum applicants, as they had filed their own petitions. By a de novo review, the BIA held that Zhaneta and Mirta were not entitled to political asylum because they did not establish persecution on account of any statutorily-protected ground. Similarly, the BIA determined that Zhaneta and Mirta were not entitled to withholding of removal. All three petitioners appeal.

II.

Mehmet argues that the BIA erred as a matter of law in holding that he failed to establish a "clear probability of persecution" by either the Democrats or Socialists on account of his political opinions if returned to Albania. This court reviews for abuse of discretion, and analyzes the underlying factual findings using the substantial evidence standard. *See* **Hasalla v. Ashcroft**, 367 F.3d 799, 803 (8th Cir. 2004). The BIA's factual determinations are upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." **INS v. Elias-Zacarias**, 502

---

[2]Mehmet did not challenge the denial of asylum before either the BIA or this court.

U.S. 478, 481 (1992). Reversal of the BIA's decision is warranted only if the evidence is so compelling that no reasonable fact-finder could fail to find the requisite fear of persecution. *See id.*; **8 U.S.C. § 1252(b)(4)(B)**.

Withholding of removal is available only if the petitioner can show that his or her life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. **8 U.S.C. § 1231(b)(3)**. The standard for mandatory withholding of removal is stringent, a "clear probability that he or she will face persecution in the country to which he or she will be deported." ***Eta-Ndu v. Gonzales***, 411 F.3d 977, 986 (8th Cir. 2005), *quoting* ***Krasnopivtsev v. Ashcroft***, 382 F.3d 832, 803 (8th Cir. 2004). Under this standard, the petitioner must show that "more likely than not" he or she would be subjected to persecution on account of one (or more) of the statutory grounds. *See* ***INS v. Stevic***, 467 U.S. 407, 429 (1984).

Mehmet claims that his political opinions make it more likely than not that he will suffer persecution by members of the Socialist and/or Democratic parties if returned to Albania, as evidenced by his previous experiences. A petitioner can meet the statutory burden of proving a clear probability of future persecution by offering compelling evidence of past persecution. *See* **8 C.F.R. § 1208.16(b)(1)(i)**. Such evidence creates a presumption that the petitioner's life or freedom will be threatened if removed to the same country where persecution was previously inflicted. ***Id.*** However, the government may rebut this presumption by establishing that there has been a "fundamental change in circumstances such that the applicant's life would not be threatened . . . upon removal to that country." ***Id.* § 1208.16(b)(1)(i)(A)**.

The BIA first determined that, as to Socialist persecution, the conditions in Albania had changed to such a degree that Mehmet no longer faced a clear probability of persecution by Socialists if deported. The BIA relied on the U.S. State Department's 2002 Country Report on Human Rights Practices in Albania, which

reported that Albania had made progress in transitioning to a multiparty republic and that there were no longer confirmed reports of politically-motivated harm to members of the Democratic Party. *See Hasalla*, 367 F.3d at 804, *citing Perinpanathan v. INS*, 310 F.3d 594, 599 n.1 (8th Cir. 2002) (relying on State Department Human Rights reports on Albania as persuasive authority); *see also Gebrehiwot v. Ashcroft*, 374 F.3d 723, 726 (8th Cir. 2004). The BIA also found that over a decade has passed since Mehmet left Albania, and that he had not maintained any connections with members of the Democratic Party – rivals of the Socialists – since 1994. *See Regalado-Garcia v. INS*, 305 F.3d 784, 788 (8th Cir. 2002) (relying on passage of time and changed country conditions in denying petitioner asylum). The BIA concluded that Mehmet had not shown a likelihood of persecution by the Socialist Party on account of a Democratic political opinion. This court finds that this factual determination is supported by substantial evidence in the record.

As to persecution by the Democrats, the BIA determined that no compelling evidence linked Mehmet's past persecution to a statutorily-protected ground. In order to show a "clear probability of persecution" if returned to Albania, Mehment focuses on the beatings after he refused to tamper with ballot boxes or accept a bribe during the 1994 constitutional referendum. The BIA's analysis of this evidence was that the Democrats' motive for persecuting Mehmet was his non-cooperation during the referendum, not his political opinion.

While Mehmet is not required to establish the exact motive for persecution, he must present credible evidence that the persecution was at least partly motivated by his political opinion, or another statutorily-protected ground. *See Elias-Zacarias*, 502 U.S. at 483-84; *Melecio-Saquil v. Ashcroft*, 337 F.3d 983, 986 (8th Cir. 2003). *See also Mohamed v. Ashcroft*, 396 F.3d 999, 1003-04 (8th Cir. 2005). Like the petitioner in *Elias-Zacarias*, Mehmet never claimed (or sufficiently established) that he refused to cooperate with the Democrats' referendum demands because of a political opinion. *Elias-Zacarias*, 502 U.S. at 483; *see also Melecio-Saquil*, 337 F.3d

at 986. Implying he was a Democrat at that time, he testified that he told the attackers that the people in his area would support the referendum without this criminal activity. True, the BIA failed to consider that Mehmet's non-cooperation could hurt the Democrats at the polls, and that they might later seek retribution. However, this court finds insufficient record proof that Democrats persecuted Mehmet on account of an actual or implied political opinion. *See Elias-Zacarias*, 502 U.S. at 482-83; *Hasalla*, 367 F.3d at 804. This conclusion is bolstered by the vague and speculative testimony of Mehmet and Zhaneta, neither of whom could identify any individual in the Democratic Party who harmed a Ruzi family member at any other time. *See Hasalla*, 367 F.3d at 804. Importantly, there is no other evidence in the record to support Mehmet's claim that he fears persecution on account of a protected political opinion.

Given the speculative evidence supporting Mehmet's position, as well as the changed country conditions in Albania during the 11 years he has been absent from the country, this court concludes Mehmet did not sufficiently establish a "clear probability" of persecution by Democrats if returned to Albania. Accordingly, the BIA's denial of his petition for withholding of removal is affirmed.

III.

Zhaneta and Mirta[3] petition for review of the BIA's denial of their application for political asylum, alleging a well-founded fear of persecution if forced to return to Albania. This court employs the same deferential standard in reviewing denials of asylum as in reviewing denials of withholding of removal. *See Francois v. INS*, 283 F.3d 926, 931 (8th Cir. 2002). This court applies the substantial evidence standard: reversal of the BIA's decision is warranted only if the evidence is so compelling that no reasonable fact-finder could fail to find the requisite well-founded fear of persecution. *Elias-Zacarias*, 502 U.S. at 481.

The Attorney General may, in his discretion, grant asylum to any refugee. **8 U.S.C. § 1158(b)**. A "refugee" is a person who is unwilling or unable to return to his or her home country "because of persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. . . ." **8 U.S.C. § 1101(a)(42)(A)**. To show a well-founded

---

[3]For the first time on appeal, Mirta argues that she – then a six-year-old – could not have formed the requisite intent to commit fraud or legal misrepresentation by entering the United States with a fabricated passport in 1999. She requests that only as to her, this court vacate the BIA's finding of removability based on fraud. Mirta's appointed counsel, however, admitted the fraud charge on her behalf before the Immigration Judge, and she did not contest this admission before the BIA. While Mirta now argues that this court has the inherent authority to correct this injustice, she did not exhaust her administrative remedies before either the Immigration Judge or the BIA. She cannot bypass the administrative process, as this court is without inherent authority to correct an apparent administrative oversight. *See Arellano-Garcia v. Gonzales*, 429 F.3d 1183, 1187 (8th Cir. 2005) (requiring exhaustion of remedies before the BIA); *Etchu-Njang v. Gonzales*, 403 F.3d 577, 582-83 (8th Cir. 2005) (same). Rather, her remedies (if any) lie with the agency, by seeking to reopen the proceedings to expunge the fraud charge from her record. *See, e.g.,* **8 C.F.R. §§ 1003.2(a), 1003.2(c)(3)(iii)** (discretionary reconsideration or reopening of the BIA proceedings upon motion of the parties).

fear of future persecution, the petitioner need not establish with mathematical certainty that he or she will face persecution if returned. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 440 (1987). Rather, the petitioner's fear must be both subjectively and objectively reasonable, such that a reasonable person in the petitioner's position would fear persecution on account of a statutorily-protected ground if returned home. *Regalado-Garcia*, 305 F.3d at 788.

Like the standard for withholding of removal, there is a rebuttable presumption of future persecution, once the petitioner proves past persecution. *See Eta-Ndu*, 411 F.3d at 983; **8 C.F.R. § 1208.13(b)(1)(i)**. In this case, Zhaneta argues that she and Mirta suffered past persecution at the hands of Democratic Party members in Albania after her husband left for the United States in 1995. She testified about both a 1996 beating that caused a miscarriage, and a 1998 incident where two strange men stared at Mirta as she played. While Zhaneta testified that she feared the men would kidnap Mirta in retribution for her husband's refusal to tamper with the 1994 constitutional referendum, her asylum application stated that she feared Mirta would be kidnapped for sale in the Albanian sex trade.

The BIA reasonably concluded that, although the 1996 beating and subsequent miscarriage were reprehensible, Zhaneta failed to establish that she was persecuted on account of a protected ground. Throughout the proceedings, Zhaneta never identified who entered her home and beat her. *See Menendez-Donis v. Ashcroft*, 360 F.3d 915, 917-19 (8th Cir. 2004). Thus, the BIA concluded that she had no foundation for her belief that the unidentified men were Democrats seeking retribution against her husband for his political activities. Moreover, Zhaneta lived peacefully in Albania for three years after this incident before departing for the United States with her daughter. Although Zhaneta testified that her fears were renewed in late 1998 when strange men stared at Mirta, the BIA found that she could not identify these individuals, and thus, had no basis to believe that they would kidnap her in retribution for Mehmet's previous political activities. The BIA concluded that Zhaneta had not met her burden

-10-

of establishing a well-founded fear of future persecution if returned to Albania. As substantial evidence supports this conclusion, this court affirms the agency decision.

## IV.

Finally, Zhaneta and Mirta maintain that the BIA erred in denying their applications for withholding of removal, as they established the requisite "clear probability" of persecution if deported to Albania. The "clear probability" standard is more onerous than the "well-founded fear" standard required for a grant of asylum. *See* **Turay v. Ashcroft**, 405 F.3d 663, 667 (8th Cir. 2005). As substantial evidence supports the denial of Zhaneta's and Mirta's request for asylum, substantial evidence likewise supports the BIA's determination that they did not show a "clear probability" of persecution in Albania if forced to return.

## V.

The decision of the BIA is affirmed.

_____