NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0459n.06

Case No. 21-4190

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| JOSE WILLIAN GARCIA-DOMINGUEZ, | ) | FILED<br>Nov 16, 2022<br>DEBORAH S. HUNT, Clerk |
| Petitioner, | ) |  |
|  | ) |  |
| v. | ) | ON PETITION FOR REVIEW |
|  | ) | FROM THE UNITED STATES |
|  | ) | BOARD OF IMMIGRATION |
| MERRICK B. GARLAND, Attorney General, | ) | APPEALS |
| Respondent. | ) |  |
|  | ) |  |
|  | ) | OPINION |

Before: GUY, WHITE, and LARSEN, Circuit Judges.

**RALPH B. GUY, JR., Circuit Judge.** Petitioner, a native and citizen of El Salvador, entered the United States unlawfully, conceded inadmissibility, and seeks review of the decision denying his applications for asylum and withholding of removal. Concluding that the petition has not identified anything that compels a contrary result, the petition for review is denied.

I.

In March 2014, petitioner Jose Willian Garcia-Dominguez entered the United States by crossing the border into Texas without a valid entry document and was taken into custody the same day. Although petitioner initially indicated that he was not afraid to return to El Salvador, he stated in a later credible fear interview that he was afraid of harm from gang members if he were to return to El Salvador. After the Department of Homeland Security (DHS) initiated removal proceedings

in April 2014, petitioner conceded inadmissibility and applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).

In February 2019, at a merits hearing before an Immigration Judge (IJ), Garcia-Dominguez testified that he was a member of the ARENA (Alianza Republicana Nacionalista) political party and had passed out flyers in support of the ARENA party approximately seven times. Petitioner conceded that he received no threats while passing out flyers supporting the ARENA party. He was first threatened on February 2, 2014, while serving as a watchman for an election and checking voting identification documents. While performing those duties, another watchman who supported the FMLN (Frente Farabundo Marti para la Liberacion Nacional) political party asked petitioner to let MS-13 gang members vote for FMLN without proper identification. When petitioner refused, two gang members threatened him and then left. Security came and escorted petitioner home.

A few days later, petitioner received a phone call warning him to let the MS-13 gang members vote or else he would be killed. The caller also said petitioner would be forgiven if he joined the gang. Petitioner believed that the caller wanted him to join the MS-13 gang because he lived in an area controlled by the rival MS-18 gang. On February 10, 2014, petitioner made a report of those threats to the police and his report was processed. A few days later, on February 13, 2014, armed gang members appeared at petitioner's house, stating that they knew about the police report and that they wanted to kill him. Petitioner, who was in another town at the time, testified that he believed corrupt police told the gang that he had made the report. Petitioner left El Salvador the next day.

Petitioner believed he would not be safe from MS-13 anywhere in El Salvador because of police corruption. He also feared harm from MS-13 if he were to return to El Salvador, explaining

that he had nightmares about being killed in El Salvador. Petitioner acknowledged that members of his family remained in El Salvador and had not been bothered by MS-13 gang members. He also acknowledged that the FMLN party took third place and that the ARENA party took second place in the most recent election.

The IJ's oral decision noted inconsistencies in petitioner's testimony but declined to make an adverse credibility determination. The IJ found petitioner's proposed social groups are not legally cognizable, and the Board of Immigration Appeals (BIA) agreed. Specifically, the first proposed group—Salvadoran citizens that are members of the ARENA political party who refused to let MS-13 gang members vote for the FMLN party and report the election fraud to the police— lacked the necessary social distinction. The second proposed group—Salvadoran citizens who live in the MS-18 gang territory and refuse to join the MS-13 gang—lacked particularity. Further, the IJ and BIA found petitioner had not established a nexus between the claimed persecution and either his political opinion or the proposed social groups. Finally, the IJ determined, and the BIA agreed, that petitioner failed to show that the Salvadoran authorities were or would be unable or unwilling to control the MS-13 gang members. Accordingly, the BIA affirmed the IJ's denial of asylum and withholding of removal and deemed petitioner to have abandoned any challenge to the denial of protection under the CAT. This court has jurisdiction to review the BIA's decision under 8 U.S.C. § 1252.[1]

## II.

When, as here, "the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's

---

[1] Petitioner does not contest the finding that he abandoned the claim for relief under the CAT, so we need not determine whether that claim was administratively exhausted. *See Hassan v. Gonzales*, 403 F.3d 429, 432 (6th Cir. 2005).

decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). The court also reviews the immigration judge's decision to the extent that the reasoning is adopted by the BIA. *Id*. (citing *Patel v. Gonzales*, 470 F.3d 216, 218 (6th Cir. 2006)). "Questions of law are reviewed de novo," *id*., and "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B).

In the end, the BIA's determination on the requested relief will be upheld if it is supported by substantial evidence. *See Cruz-Guzman v. Barr*, 920 F.3d 1033, 1035 (6th Cir. 2019); *Kukalo v. Holder*, 744 F.3d 395, 399-400 (6th Cir. 2011). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). That is, we may reverse only if the decision was "manifestly contrary to law," 8 U.S.C. § 1252(b)(4)(C), such that "the evidence 'not only supports a contrary conclusion, but indeed *compels* it,'" *Haider v. Holder*, 595 F.3d 276, 281 (6th Cir. 2010) (quoting *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003)).

## A.

To be eligible for asylum at the discretion of the Attorney General, the applicant must establish that he is a "refugee." 8 U.S.C. § 1158(b)(1)(A)-(B)(i); *see also Cruz-Guzman*, 920 F.3d at 1035-36. A refugee is an alien who is "unable or unwilling to return to . . . [their] country because of [past] persecution or a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *see also* 8 C.F.R. § 1208.13(b); *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2010). Petitioner must show that the protected ground—here, a social group or political

opinion—"was or will be at least one central reason for persecuting" him. *Umaña-Ramos v. Holder*, 724 F.3d 667, 671 (6th Cir. 2013) (quoting 8 U.S.C. § 1158(b)(1)(B)(i)).

Garcia-Dominguez relied on both past persecution and fear of future persecution on account of membership either in one of the two proffered social groups or on account of his political opinion. Persecution is "the infliction of harm or suffering by the government, or persons the government is unwilling or unable to control, to overcome a characteristic of the victim." *Bonilla-Morales*, 607 F.3d at 1136 (quoting *Al-Ghorbani v. Holder*, 585 F.3d 980, 997 (6th Cir. 2009)). Petitioner was threatened with harm or death on three occasions: when he refused to allow MS-13 gang members to vote; in a phone call if he did not let them vote or join MS-13 himself; and to family members at his home a few days after he made a police report about that call.

Petitioner argues these threats suffice for past persecution, but neither the IJ nor the BIA made a determination in that regard. Persecution generally "requires more than a few isolated incidents of verbal harassment or intimidation." *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005) (quoting *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998)). But, because there is no agency determination in that regard, we assume without deciding that persecution was established. *See Gonzales v. Thomas*, 547 U.S. 183, 186 (2006); *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 318 (6th Cir. 2018). Nonetheless, petitioner is not entitled to relief for other reasons.

First, petitioner offered no evidence to show that either of the two groups he proposes is perceived as a distinct group by Salvadoran society. *Zaldana Menijar v. Lynch*, 812 F.3d 491, 498 (6th Cir. 2015); *Umaña-Ramos*, 724 F.3d at 674. A "particular social group" must satisfy three requirements: "(1) immutability (members must share an immutable characteristic), (2) particularity (the group has discrete and definable boundaries), and (3) social distinction

(society actually perceives the purported group as a distinct class of persons)." *Cruz-Guzman*, 920 F.3d at 1036; *see also Umaña-Ramos*, 724 F.3d at 671.

The BIA found that the group defined as "Salvadoran citizens who live in one gang's territory and refuse to join MS-13" is not cognizable. "This court has already rejected the claim that individuals targeted to join MS-13 qualify as a socially distinct group." *Cruz-Guzman*, 920 F.3d at 1036; *see also Lopez Sosa v. Barr*, 780 F. App'x 307, 308 (6th Cir. 2019) (rejecting claim that "individuals who refuse to join gangs make up a 'particular social group'"). The group also lacks particularity because it includes everyone who is not part of MS-13, so it is too broad to constitute a particular social group. *See Castro v. Holder*, 530 F. App'x 513, 517 (6th Cir. 2013) (discussing *Matter of S-E-G-*, 24 I&N Dec. 579, 584-88 (BIA 2008)).

Likewise, the group defined as "Salvadoran citizens that are members of the ARENA political party who refuse to let MS-13 gang members vote for the FLMN party and report the election fraud to the police" lacks social distinction. Petitioner argues that BIA was wrong to conclude as much because MS-13 was aware that he made a police report, but the "persecutors' perception is not itself enough to make a group socially distinct." *Menijar*, 812 F.3d at 499 (quoting *Matter of W-G-R-*, 26 I&N Dec. 208, 218 (BIA 2014)). To the extent that petitioner points to his actions as an election watchman, there was no evidence that Salvadoran society perceives individuals who report election fraud as constituting a particular or distinct social group. *See Miguel-Jose v. Garland*, 852 F. App'x 885, 889-90 (6th Cir. 2021) (finding "no evidence that the social group of witnesses to crime warrants unique status in Guatemalan society").

Second, petitioner argues that he established persecution on account of his political opinion because he was threatened when he did not allow MS-13 gang members to commit voter fraud. However, the IJ found that petitioner was threatened by the MS-13 gang members because "he

interfered with their efforts to vote improperly in order to increase their influence and power . . . rather than on account of his membership in either of his proffered social groups or his political opinion." The BIA agreed, adding that the IJ's finding was supported by evidence that petitioner was not threatened "during the 5 months he engaged in public activities for the ARENA party prior to the February 2014 election and . . . only began receiving threats after he refused to let the gang members vote without proper documentation." "[T]he mere existence of a generalized 'political' motive" does not establish that persecution is on account of political opinion. *INS v. Elias-Zacarias*, 502 U.S. 478, 482 (1992); *see also Ruzi v. Gonzales*, 441 F.3d 611, 615-16 (8th Cir. 2006). The evidence does not compel the conclusion that petitioner's own political opinion (*i.e.*, support for the ARENA party) was a reason for the gang members' threats.

Further, because Garcia-Dominguez claimed persecution by non-governmental actors, he had to show that his persecutors, *e.g.*, the MS-13 gang members, are "either aligned with the government or that the government is unwilling or unable to control" them. *Juan Antonio v. Barr*, 959 F.3d 778, 793 (6th Cir. 2020) (citing *Khalili*, 557 F.3d at 436). Whether the government is unwilling or unable to control his persecutors is determined from the overall context, looking to both "(1) the government's response to an asylum applicant's persecution and (2) general evidence of country conditions." *K.H. v. Barr*, 920 F.3d 470, 476 (6th Cir. 2019). The IJ found, and the BIA agreed, that Garcia-Dominguez had failed to make this showing, emphasizing that petitioner was escorted home after the first threats from MS-13 gang members who were not allowed to vote without proper identification and that petitioner's report to the police concerning the threats from MS-13 gang members was processed. This evidence contradicted petitioner's claim that the government was unable or unwilling to control his persecutors. As for evidence that gang members went to petitioner's home when he was not there and threatened to kill him for making the police

report, those threats were not reported and petitioner left El Salvador the next day. This court has upheld the BIA's "rejection of a claim that the government was unable or unwilling to control a private party in part because the asylum applicant did not notify the government of the abuse." *Ortiz v. Garland*, 6 F.4th 685, 690 (6th Cir. 2021) (citing cases).

Nor was this showing met by petitioner's generalized assertions of police corruption or his unsubstantiated belief that corrupt police must have informed MS-13 gang members that he made the police report. The BIA considered evidence of country conditions showing that "the Salvadoran authorities actively work to combat gangs in the country." Petitioner argues that there was evidence that gangs in El Salvador operate with impunity and that credible news reports suggest agreements between officials supporting the FMLN party and MS-13 gang members. Yet, the U.S. State Department's 2017 Human Rights Report and 2018 Crime & Safety Report observed efforts have been made to prosecute gang-related crimes and corruption. *See, e.g.*, *Galdamez v. Lynch*, 630 F. App'x 608, 610 (6th Cir. 2015) (noting El Salvador's efforts to control the gangs); *see also Rosa-Mejia v. Garland*, 854 F. App'x 9, 13-14 (6th Cir. 2021) (finding "unable or unwilling" showing not made where police offered assistance and "the Salvadorian government had taken steps to curb gang violence amongst the police").

Because the evidence does not compel a contrary conclusion, the BIA's decision to deny petitioner's application for asylum is supported by substantial evidence. *See Haidar*, 595 F.3d at 281; *Koulibaly v. Mukasey*, 541 F.3d 613, 620 (6th Cir. 2008) ("[T]he court may not reverse the Board's determination simply because [it] would have decided the matter differently." (quoting *Ouda*, 324 F.3d at 451)).

B.

Withholding of removal is mandatory if an alien shows that their "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *see also Khalili*, 557 F.3d at 435. Although the nexus required is more lenient than for asylum, the petitioner must meet "a more stringent burden [with respect to persecution] than what is required on a claim for asylum." *Urbina-Mejia v. Holder*, 597 F.3d 360, 365 (6th Cir. 2010) (quoting *Liti v. Gonzales*, 411 F.3d 631, 640 (6th Cir. 2005)). Where, as here, petitioner has not developed any distinct argument challenging the denial of withholding of removal, the claim may be deemed abandoned. *See De Morales v. Barr*, 799 F. App'x 364, 367 (6th Cir. 2020).

To the extent that petitioner's asylum arguments apply, "eligibility for withholding of removal requires that the risk of [future] persecution be on account of a statutorily protected ground." *Umaña-Ramos*, 724 F.3d at 674. Because petitioner did not establish that any persecution he might face would be on account of his membership in a statutorily protected social group or because of his political opinion, the BIA's decision to deny withholding of removal was also supported by substantial evidence.

III.

Accordingly, Garcia-Dominguez's petition for review is DENIED.