03-4811(L)
Koudriachova v. Gonzales

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2006

(Argued October 30, 2006      Decided June 26, 2007)

Docket Nos. 03-4811(L), 03-41229(Con)

_____

ELENA KOUDRIACHOVA, ALEXANDRE KOUDRIACHOV,
& ILIA KOUDRIACHOV,

Petitioners,

v.

ALBERTO R. GONZALES, Attorney General,

Respondent.

_____

Before:

CARDAMONE, WALKER, and RAGGI,
Circuit Judges.

_____

Petitioner Alexandre Koudriachov petitions for review of the March 26, 2003 order of the Board of Immigration Appeals (BIA) dismissing his application for asylum. Koudriachov also petitions for review of the BIA's December 12, 2003 order denying his motion to reconsider its March 26, 2003 decision.

Petition granted, in part, and dismissed, in part.

_____

MICHAEL P. DiRAIMONDO, Melville, New York (Marialaina L. Masi,
    Mary Elizabeth Delli-Pizzi, DiRaimondo & Masi, LLP,
    Melville, New York, of counsel), for Petitioners.

Norman Cairns, Assistant United States Attorney, Albuquerque, New
    Mexico (David C. Iglesias, United States Attorney, District
    of New Mexico, Albuquerque, New Mexico), filed a brief for
    Respondent.

CARDAMONE, Circuit Judge:

Petitioner Alexandre Koudriachov (petitioner or appellant) seeks review of a March 26, 2003 decision and order of the Board of Immigration Appeals (BIA or Board), denying his application for asylum and withholding of removal. In re Koudriachova, No. A 70 652 782 (B.I.A. Mar. 26, 2003), aff'g No. A 70 652 782 (Immig. Ct. N.Y. City Feb. 22, 1999).

The BIA, in a nonprecedential decision by a single member of the Board, dismissed petitioner's appeal because it found he had failed to show that he had been persecuted, or that he had a well-founded fear of future persecution, on account of any of the grounds protected by the Immigration and Nationality Act (INA). Koudriachov also seeks review of the BIA's December 12, 2003 order denying his motion to reopen its March 26, 2003 decision. In re Koudriachova, No. A 70 652 782 (B.I.A. Dec. 12, 2003).

Because the BIA's March 26, 2003 decision dismissing petitioner's appeal contains significant ambiguities and potential misunderstandings of the relevant legal standards, we grant the petition for review and remand to the BIA for additional investigation or explanation. We dismiss petitioner's motion to reopen the December 12, 2003 order of the BIA as moot.

BACKGROUND

The BIA held that Koudriachov was ineligible for asylum even if his testimony before the immigration judge (IJ) and in his asylum application was wholly credible. Consequently, for purposes of this appeal, we accept petitioner's account of the

2

events leading up to his application for asylum as truthful and accurate. See Yan Chen v. Gonzales, 417 F.3d 268, 271-72 (2d Cir. 2005).

Koudriachov is a native of the former United Soviet Socialist Republic (Soviet Union or USSR). In his testimony before the IJ, petitioner provided a harrowing and at times brutal account of his experiences in the Soviet military and as a neophyte Russian intelligence agent. His encounters with the Soviet military began when he was 18 and, as part of a period of mandatory military service, he was drafted into the USSR Ministry of Internal Affairs (MVD). Petitioner explained that the MVD was not a part of the regular Soviet army, but rather comprised a special group of troops responsible for guarding secret military objects and locations, controlling riots in prisons and student towns, and fulfilling special assignments relating to terrorism and saboteur groups. To prepare MVD soldiers for their unique responsibilities, they were given extensive physical, psychological, and ideological conditioning. Koudriachov found objectionable many aspects of the MVD training program and operations. In particular, he believes it morally wrong that convicted criminals were brought to the MVD base so that soldiers could practice combat techniques on them. Partially as a result of his moral misgivings regarding these practices, Koudriachov resolved not to pursue a military career.

He completed his term of military service in 1983 and subsequently enrolled at the Leningrad Institute of Meteorology

3

(Institute) in what is now the City of St. Petersburg. Following his participation in an international student festival, Koudriachov was summoned to the regional headquarters of the Komsomol, the youth wing of the Communist Party. There he met with a Komsomol official who ordered him to write reports on his interactions with foreigners. Koudriachov objected to writing such reports, but agreed to do it after being threatened with expulsion from the Institute. The purpose of the reports was never explained, though petitioner suspected they were used to obtain personal information about foreigners for the purpose of blackmailing them. He believes he was selected for this task because of his previous training with the Ministry of Internal Affairs.

In his third year at the Institute Koudriachov was ordered to report to an address, No. 4 Liteynyi, which was known to be the headquarters of the KGB Intelligence Service in Leningrad (St. Petersburg). There he met an individual referred to as Vitaly Sergeyevich. There is some confusion in the record as to whether Sergeyevich contacted Koudriachov on behalf of the MVD or the KGB. We will refer to the agency as the KGB for purposes of this opinion without resolving this factual question.

Sergeyevich became Koudriachov's contact within the KGB. In their initial meeting, Sergeyevich informed the petitioner that he had been selected to work as a spy for the Soviet government and that he would eventually be attending a special school in

4

Moscow to prepare him for this work. Koudriachov had no desire to become a KGB agent but realized he had no choice.

After graduating from the Meteorology Institute in 1989, petitioner received an assignment from Sergeyevich to begin work at a factory that employed many foreign specialists. Koudriachov was told that he would work there for a few years before attending spy school. Petitioner testified that throughout his employment at the factory he met regularly with Sergeyevich to report technical and personal information he had obtained from his co-workers. While Koudriachov thought it immoral to betray his co-workers in this way, he continued to divulge the information because Sergeyevich threatened him by saying he would be drafted into the army or subject to violence were he to refuse.

As the date for petitioner's departure to spy school drew near, he resolved to defect from the KGB and flee with his family to the United States. In preparation for this momentous step, Koudriachov tried to distance himself from Sergeyevich's surveillance by moving to a different address in St. Petersburg. However, very soon after he moved, he was attacked in the street by two men who Koudriachov believes were sent by Sergeyevich. Indeed, the day after the attack, the petitioner was summoned to Sergeyevich's office and asked about his change of residence.

On September 20, 1992 Koudriachov and his family entered the United States on visitor visas. In 1993 Koudriachov's wife, Elena, applied for asylum and withholding of removal.

5

Koudriachov was selected for a Diversity Visa in April 1998 and became eligible for adjustment of status to legal permanent resident. Once he realized that his adjustment application required him to request that the Russian government reissue or register his passport, however, Koudriachov decided that he could not pursue his adjustment application and had to pursue an asylum claim instead. The IJ allowed Koudriachov to substitute his asylum application for that of his wife's on October 28, 1998.

On February 22, 1999 the IJ rejected the petitioner's application for asylum and withholding of removal, finding that he was not credible. Koudriachov appealed the decision to the BIA. On March 26, 2003 the BIA dismissed the appeal. The BIA assumed the petitioner was credible, but found he had nonetheless failed to establish that he was persecuted or fears persecution on account of any ground protected under the INA. Ninety days later, petitioner filed a timely motion to reopen with the BIA in which he offered new evidence in the form of an expert affidavit of a former KGB intelligence officer, Yuri Shvets, and, for the first time, requested relief under CAT. On December 12, 2003 the BIA denied the motion to reopen. Koudriachov now petitions for review of the BIA's dismissal of his appeal from the IJ's February 22, 1999 decision and the BIA's denial of his motion to reopen. We grant the petition in part, and dismiss in part.

DISCUSSION

I   Overview of Applicable Law

Where, as here, the BIA does not adopt the IJ's decision to any extent, we review only the decision of the BIA. See Chen v. Bureau of Citizenship & Immigration Servs., 470 F.3d 509, 513 (2d Cir. 2006). We review de novo the BIA's interpretation of the law as well as its application of the law to the facts. See Tanov v. INS, 443 F.3d 195, 198 (2d Cir. 2006). When the BIA interprets ambiguous language in the INA in a precedential opinion issued by a three judge panel, we defer to that interpretation so long as it is reasonable. See Rotimi v. Gonzales, 473 F.3d 55, 56-58 (2d Cir. 2007) (per curiam); Chevron U.S.A. Inc. v. Nat'l Res. Def. Council, Inc., 467 U.S. 837, 843-44 (1984). Factual findings are reviewed under the substantial evidence standard and are upheld when they are supported in the record by reasonable, substantial, and probative evidence. See Islami v. Gonzales, 412 F.3d 391, 396 (2d Cir. 2005).

To qualify as a "refugee," an asylum applicant must establish that he or she has been persecuted in the past, or has a well-founded fear of persecution in the future, on any one of five statutorily protected grounds. See Edimo-Doualla v. Gonzales, 464 F.3d 276, 281 (2d Cir. 2006). These grounds include persecution on account of (1) race, (2) religion, (3) nationality, (4) membership in a particular social group, or (5) political opinion. 8 U.S.C. § 1101(a)(42). In this case, Koudriachov asserts that he is eligible for asylum because he

7

faces persecution in Russia on account of his membership in the particular social group of defected KGB intelligence agents and on account of political opinions that will be imputed to him. Such fear may be well-founded even if there is only a slight, though discernible, chance of persecution. Yan Chen, 417 F.3d at 270.

## II  Membership in a Particular Social Group

### A.  General Principles

We have observed that of the five grounds protected under the INA, membership in a "particular social group" is the least well-defined on its face. See Hong Ying Gao v. Gonzales, 440 F.3d 62, 66-67 (2d Cir. 2006). Because the legislative history of the INA does not shed much, if any, light on the meaning of the phrase, courts have struggled to apply it. See Fatin v. INS, 12 F.3d 1233, 1239 (3d Cir. 1993) (Alito, J.) (detailing legislative history of particular social group language and noting lack of evidence regarding legislative aim). It is fair to say that the resulting applications establishing refugee status on this ground have not been entirely consistent. Among the groups that the various courts of appeals have found, on the one hand, to qualify as particular social groups under the INA are: women sold into marriage who live in a part of China where forced marriages are considered valid and enforceable, Hong Ying Gao, 440 F.3d at 70; former employees of Columbia's Attorney General's Office, Sepulveda v. Gonzales, 464 F.3d 770, 772 (7th Cir. 2006); the educated, landowning class of cattle farmers

8

targeted by the Revolutionary Armed Forces of Columbia, <u>Tapiero de Orejuela v. Gonzales</u>, 423 F.3d 666, 672 (7th Cir. 2005); Somalian females, <u>Mohammed v. Gonzales</u>, 400 F.3d 785, 798 (9th Cir. 2005); and gay men with female sexual identities in Mexico, <u>Hernandez-Montiel v. INS</u>, 225 F.3d 1084, 1094 (9th Cir. 2000). On the other hand, the following groups have been found not to constitute particular social groups:  uncorrupt Ukrainian prosecutors who exposed government corruption, <u>Pavlyk v. Gonzales</u>, 469 F.3d 1082, 1088 (7th Cir. 2006); anonymous noncriminal informants, <u>Castillo-Arias v. U.S. Att'y Gen.</u>, 446 F.3d 1190, 1197 (11th Cir. 2006); tattooed youth, <u>Castellano-Chacon v. INS</u>, 341 F.3d 533, 549 (6th Cir. 2003); and children from Northern Uganda, <u>Lukwago v. Ashcroft</u>, 329 F.3d 157, 171-72 (3d Cir. 2003).

### B. <u>BIA's Test In </u>Matter of Acosta

In 1985, the BIA undertook to clarify the meaning of the phrase particular social group in the seminal decision of <u>Matter of Acosta</u>, 19 I. & N. Dec. 211, 232-34 (BIA 1985), <u>overruled in part on other grounds by</u> INS v. Cardoza-Fonseca, 480 U.S. 421 (1987).  In <u>Matter of Acosta</u>, the BIA explained that a particular social group is one unified by some characteristic that is either (1) "beyond the power of an individual to change" or (2) "so fundamental to individual identity or conscience that it ought not be required to be changed."  <u>Matter of Acosta</u>, 19 I. & N. Dec. at 233.  The BIA explained that "[t]he shared characteristic might be an innate one such as sex, color, or kinship ties, or in

9

some circumstances it might be a shared past experience such as former military leadership or land ownership." Id.

Recently, in In re C-A-, 23 I. & N. Dec. 951 (BIA 2006), the BIA reaffirmed the Acosta test and provided further clarification regarding its proper application. See id. at 955-61. It observed that Acosta does not require "a voluntary associational relationship among group members" nor does it require an element of "cohesiveness or homogeneity among group members." Id. at 956-57. However, a group's "visibility" -- meaning the extent to which members of society perceive those with the relevant characteristic as members of a social group -- is a factor in determining whether it constitutes a particular social group under the INA. Id. at 957, 959-60.

With regard to groups united by some shared past experience, In re C-A- reiterated that shared past experiences do constitute an immutable characteristic because a past experience cannot be undone. See id. at 958; see also Matter of Fuentes, 19 I.& N. Dec. 658, 662 (BIA 1988) (stating that an applicant's status "as a former member of the national police" was "in fact an immutable characteristic" that could serve as the basis of a particular social group). Yet, not all applicants who can point to membership in some group united by a shared past experience will qualify for asylum. Rather, an asylum applicant's status as a member of a particular social group -- and not some other factor -- must be the central reason why that individual is targeted for persecution. Thus, the BIA indicated that an individual who is

10

targeted due to her status as a former police officer may be eligible for asylum as a member of the particular social group of former police officers. See In re C-A-, 23 I. & N. Dec. at 958-59; see also Matter of Fuentes, 19 I. & N. Dec. at 662. But, a former police officer singled out for reprisal because of her role in disrupting particular criminal activity would likely not be eligible for asylum. In re C-A-, 23 I. & N. Dec. at 959. In the second scenario, the persecution the applicant fears is not a result simply of her status as a former police officer, but rather is a result occasioned by other factors more specific to the particular applicant.

In sum, the BIA has adopted a broad definition of particular social group, one that encompasses groups united by a shared past experience. Nonetheless, in determining whether an applicant ultimately qualifies for asylum, courts must examine closely whether the persecution the applicant fears derives primarily from his or her status as a member of that particular social group or whether it derives primarily from some other factor.

## C. BIA's Test is Reasonable

The BIA's interpretation of the ambiguous phrase particular social group is reasonable and merits our deference under Chevron. See Hong Ying Gao, 440 F.3d at 69-70 (stating that the BIA in Acosta adopted a reasonable interpretation of the statutory language); see also Ucelo-Gomez v. Gonzales, 464 F.3d 163, 171 (2d Cir. 2006) (per curiam) (observing that the BIA in Acosta provided guidance as to what constitutes a particular

11

social group). Our decision in <u>Gomez v. INS</u>, 947 F.2d 660 (2d Cir. 1991), has been interpreted by some other circuits as laying down a test for what constitutes a particular social group that is at odds with the <u>Acosta</u> test. <u>See</u>, <u>e.g.</u>, <u>Niang v. Gonzales</u>, 422 F.3d 1187, 1199 (10th Cir. 2005); <u>Castellano-Chacon</u>, 341 F.3d at 546 (6th Cir. 2003); <u>Mya Lwin v. INS</u>, 144 F.3d 505, 512 (7th Cir. 1998). However, we have recently clarified that the best reading of <u>Gomez</u> is one that is consistent with <u>Acosta</u>. <u>See</u> <u>Hong Ying Gao</u>, 440 F.3d at 69-70. <u>Gomez</u> involved a Salvadorian woman who applied for asylum on the grounds that she had been repeatedly raped as a youth by Guerrilla forces. <u>See</u> <u>Gomez</u>, 947 F.2d at 662. We denied her petition because there was "no indication that [the petitioner] will be singled out for further brutalization on [the basis of her past victimization]." <u>Id</u>. at 664. In <u>Hong Ying Gao</u>, we stated that broad dicta in <u>Gomez</u>'s general statement of the law should not be read "as setting an <u>a priori</u> rule for which social groups are cognizable." <u>Hong Ying Gao</u>, 440 F.3d at 69. Rather, <u>Gomez</u> should be read as standing for the proposition that an individual will not qualify for asylum if he or she fails to show a risk of future persecution on the basis of the membership claimed in the particular social group. <u>Id</u>. This reading of <u>Gomez</u> gives proper deference to the BIA's reasonable interpretation of the particular social group statutory language and accords with the approach taken by our sister circuits. <u>See</u> <u>Castillo-Arias</u>, 446 F.3d at 1196 (11th Cir. 2006); <u>Thomas v. Gonzales</u>, 409 F.3d 1177, 1184-87 (9th Cir. 2005)

12

(en banc), <u>vacated on other grounds</u>, 547 U.S. 183 (2006) (per curiam); <u>Niang</u>, 422 F.3d at 1199 (10th Cir. 2005); <u>Silva v. Ashcroft</u>, 394 F.3d 1, 5 (1st Cir. 2005); <u>Castellano-Chacon</u>, 341 F.3d at 546-48 (6th Cir. 2003); <u>Mya Lwin</u>, 144 F.3d at 512 (7th Cir. 1998); <u>Fatin</u>, 12 F.3d at 1239-40 (3d Cir. 1993).

## D. <u>Acosta</u> <u>Test Applied to the Present Case</u>

We analyze now whether the BIA correctly applied the law in this case by looking at whether the BIA's decision here was compatible with its own reasonable and precedential decision in <u>Acosta</u>. Here, the BIA concluded that Koudriachov did not belong to a particular social group because the evidence did not establish that defected KGB agents maintain "any associational relationship" or share "any recognizable and discrete characteristic." While the basis of the BIA's holding is somewhat unclear, it appears that the BIA may have misapplied its own <u>Acosta</u> test in reaching this determination. The Board's observation that Koudriachov presented no evidence that defected KGB agents associate with one another is correct; however, it is also not on point. No such associational relationship is required under <u>Acosta</u>. As the BIA recently clarified in <u>In re C-A-</u>: "Under <u>Acosta</u>, we do not require a 'voluntary associational relationship' among group members." <u>In re C-A-</u>, 23 I. & N. Dec. at 956-57.

The Board also noted that the group of defected KGB agents lack "any recognizable and discrete characteristic" but failed to explain why the shared past experience of having served in and

13

defected from the KGB does not constitute such a characteristic. Under Acosta and In re C-A-, it is clear that a shared past experience, such as prior military leadership, can be the type of immutable characteristic that will characterize a particular social group. See Acosta, 19 I. & N. Dec. at 233 (listing a "shared past experience such as former military leadership" as an example of a "shared characteristic" that unites a particular social group); In re C-A-, 23 I. & N. Dec. at 958. There is no additional requirement that members of a group share an "element of 'cohesiveness' or homogeneity." In re C-A-, 23 I. & N. Dec. at 957.

It is not our task to determine, in the first instance, whether the group of defected KGB agents constitute a particular social group. Rather, in accordance with the Supreme Court's mandate in Gonzales v. Thomas, 547 U.S. 183, 126 S. Ct. 1613 (2006) (per curiam), we remand to the BIA for additional investigation or explanation with respect to the question of whether defected KGB agents form a particular social group under the INA. See id. at 1615 (stating that "the proper course, except in rare circumstances, is to remand to the agency" for an initial determination of whether a group of persons falls within the statutory term "particular social group"). The Board may conclude that defected KGB agents -- despite their shared past experiences -- do not constitute a particular social group. But, if such is the Board's finding, it must make its reasons for that finding clear and explain how the finding comports with

14

established BIA precedent so as to afford meaningful appellate review. See Poradisova v. Gonzales, 420 F.3d 70, 77 (2d Cir. 2005) ("Despite our generally deferential review of IJ and BIA opinions, we require a certain minimum level of analysis from the IJ and BIA opinions denying asylum, and indeed must require such if judicial review is to be meaningful.").

Importantly, if the BIA finds that defected KGB agents do constitute a particular social group under the INA, that alone will not establish Koudriachov's eligibility for asylum. Rather, petitioner must establish two additional elements: (1) that he has a well-founded fear of persecution, and; (2) that he is a target of persecution primarily on account of his status as a member of the group of defected KGB agents and not on account of some other factor. See 8 U.S.C. § 1101(a)(42)(A); see also In re C-A-, 23 I. & N. Dec. at 958-59.

III   Persecution on the Basis of a Political Opinion

The Board also found appellant had failed to demonstrate that he has a reasonable fear of persecution on account of a political opinion. To establish persecution on account of a political opinion, an asylum applicant must show that the persecution arises from his or her own actual or imputed political opinion. See INS v. Elias-Zacarias, 502 U.S. 478, 482 (1992); Chun Gao v. Gonzales, 424 F.3d 122, 129 (2d Cir. 2005). It is not sufficient that the persecutor acts simply out of a generalized political motive. Elias-Zacarias, 502 U.S. at 482. Rather, "an applicant for refugee status must establish a fear of

15

reprisal that is different in kind from a desire to avoid the exactions (however harsh) that a foreign government may place upon its citizens." Xin-Chang Zhang v. Slattery, 55 F.3d 732, 751 (2d Cir. 1995), abrogated on other grounds by statute, 8 U.S.C. § 1101(a)(42).

As noted, we have adopted the widely endorsed proposition that "an imputed political opinion, whether correctly or incorrectly attributed, can constitute a ground of political persecution within the meaning of the Immigration and Nationality Act." Chun Gao, 424 F.3d at 129. We explained that the relevant question is not whether an asylum applicant subjectively holds a particular political view, but instead whether the authorities in the applicant's home country perceive him to hold a political opinion and would persecute him on that basis. See id.

In this case, the BIA ruled as follows:

> Although the respondent testified that [Sergeyevich] believed erroneously that he wanted to defect, nothing in the respondent's testimony revealed that [Sergeyevich] attributed any political opinion to the respondent's desire. Consequently, the respondent failed to establish that he held a political opinion or that one was imputed to him. For that reason, the respondent failed to establish a nexus between the harm he suffered and his political opinion and thereby failed to establish eligibility for relief on the basis of his political opinion.

From this language, it appears the Board may have inappropriately limited its analysis to the question of whether Koudriachov was persecuted, while in Russia, on account of his political opinion. This is not the claim petitioner makes. Koudriachov has

16

consistently maintained that he will be persecuted if he returns to Russia because the authorities will view his defection from the KGB as a sign of disloyalty to the established regime. He explained: "[T]hese people don't forgive the ones who defect. They consider them traitors to their mother land."

Moreover, the BIA's conclusion that nothing in petitioner's testimony demonstrated that Sergeyevich attributed any political opinion to Koudriachov's desire to defect suggests that it focused only on whether Sergeyevich imputed a political opinion to petitioner. Koudriachov's claim, however, is not that narrow. He does not aver that his fear of persecution is limited to Sergeyevich; rather, Koudriachov fears that, if returned to Russia, other government actors will subject him to persecution on account of the adverse political opinion they will impute to him. Consequently, we must remand this case for the additional purpose of allowing the Board to determine whether Koudriachov has a well-founded fear of persecution on account of any political opinion that may be imputed to him because of his defection.

                          CONCLUSION

For the foregoing reasons, we grant the petition for review and remand this case to the BIA for additional explanation and investigation into (1) whether the group of defected KGB agents constitute a particular social group under the INA and whether petitioner has a well-founded fear of future persecution based on his membership in such a group, and (2) whether the petitioner

17

has a well-founded fear of persecution on account of any political opinions that may be imputed to him as a result of his defection. The petition for review of the BIA's December 12, 2003 decision denying the motion to reopen is dismissed as moot.

Petition granted in part, and dismissed in part.