# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3702

_____

Elizabeth Simeni Ngengwe,      *
                                    *

          Appellee,      *

                                    *   Petition for Review of an order

      v.                    *   of the Board of Immigration Appeals

                                    *

Michael B. Mukasey, Attorney     *
General of the United States,     *

                                    *

          Appellant.     *

_____

Submitted: June 12, 2008
Filed: September 18, 2008

_____

Before MELLOY, ARNOLD, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Elizabeth Simeni Ngengwe petitions for review of an order of the Board of Immigration Appeals, denying her application for asylum, withholding of removal, and protection under the Convention Against Torture. Having jurisdiction under 8 U.S.C § 1252, this court grants the petition and remands to the BIA for further proceedings.

I.

Ngengwe's testimony, found credible by the IJ, is the basis of the facts recited here. *See Sholla v. Gonzales*, 492 F.3d 946, 948 (8th Cir. 2007). Ngengwe, an adult female, is a citizen of the Republic of Cameroon, and a member of the Anglophone[1] Bamileke tribe in the Southwest province. She married a member of the Francophone Bikom tribe in the Northwest province. The couple lived in the Southwest province, and had two sons. Ngengwe's husband died in a car accident in 2000. After the funeral, as a part of traditional mourning rituals, Ngengwe's in-laws detained her in their home in the Northwest province for two months, shaved her head with a broken bottle, forbade her from dressing, kept her children from her, and forced her to sleep on the ground. She initially complied with these rituals for fear that her in-laws would take her children. Ngengwe's in-laws also confiscated all of her and her deceased husband's belongings, and closed their bank account.

Ngengwe eventually escaped with her two children, fleeing to her sister's house in the Southwest province. About a month later, her in-laws showed up there, demanding that Ngengwe marry her late husband's brother, or pay the bride's price.[2] Ngengwe did not wish to marry her brother-in-law because he was older, with two other wives. When she told her in-laws that she would not marry him and could not pay the bride's price, the in-laws knocked her down and beat her. The in-laws told

---

[1] Anglophones live mainly in the Southwest Province, a part of the former British Cameroon, and speak English. They are the minority in Cameroon. Francophones live mainly in the North, part of the former French Cameroon, and speak French. They are the majority in Cameroon. *See Ntangsi v. Gonzales*, 475 F.3d 1007, 1008 (8th Cir. 2007).

[2] The bride's price is the money and goods that a husband pays the wife's family in order to marry her. There is no finding as to the exact amount here, but it is under USD $1,000.00.

Ngengwe that they would return in a month, and that if she did not marry her brother-in-law or pay the bride's price, they would kill her and take her children. Neighbors took Ngengwe to the hospital, but she did not report the incident to the police because she believed they would not do anything about a "family matter."

Ngengwe left her sister's, not telling her sister of her plans for fear that her in-laws would force her sister to reveal her whereabouts. For eight months, Ngengwe and her children stayed with a friend in a town about an hour away from her sister. Then, Ngengwe (alone) left the country and initially entered Canada on a friend's passport, but later came to the United States to be with her brother who lived in Kansas City.

Ngengwe applied for asylum in October 2001. The IJ denied her application concluding that she was not a member of a particular social group, did not suffer past persecution, was not persecuted "on account of" being a member of a particular social group, did not have a well-founded fear of future persecution, and that the government was not complicit in persecuting her. The IJ also denied Ngengwe's requests for withholding of removal and protection under the Convention Against Torture because she had not met the lower standard of proof for asylum. Ngengwe appealed the IJ's decision to the BIA, which dismissed her appeal for essentially the same reasons as the IJ stated.

## II.

"Only the BIA order is subject to our review, including the IJ's findings and reasoning to the extent they were expressly adopted by the BIA." *Osonowo v. Mukasey*, 521 F.3d 922, 926-27 (8th Cir. 2008), *quoting Fofanah v. Gonzales*, 447 F.3d 1037, 1040 (8th Cir. 2006). "When the BIA adopts the IJ's decision, but adds reasoning of its own, we review both decisions." *Setiadi v. Gonzales*, 437 F.3d 710,

713 (8th Cir. 2006). Questions of law are reviewed de novo, "according substantial deference to the BIA's interpretation of the statutes and regulations it administers." ***Bushira v. Gonzales***, 442 F.3d 626, 630 (8th Cir. 2006). "A denial of asylum is reviewed for abuse of discretion; underlying factual findings are reviewed for substantial support in the record." ***Davila-Mejia v. Mukasey***, 531 F.3d 624, 627 (8th Cir. 2008), *quoting* ***Hassan v. Gonzales***, 484 F.3d 513, 516 (8th Cir. 2007).

The Attorney General has discretion to grant asylum to any individual who is a "refugee." **8 U.S.C. § 1158(b)(1)(A)**. A refugee is an alien "who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, [the country of removal] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ." **8 U.S.C. § 1101(a)(42)(A)**. A well-founded fear of persecution must be both subjectively genuine and objectively reasonable. ***El-Sheikh v. Ashcroft***, 388 F.3d 643, 646 (8th Cir. 2004). "Persecution may be 'a harm to be inflicted either by the government of a country or by persons or an organization that the government was unable or unwilling to control.'" ***Nabulwala v. Gonzales***, 481 F.3d 1115, 1118 (8th Cir. 2007), *quoting* ***Suprun v. Gonzales***, 442 F.3d 1078, 1080 (8th Cir. 2006).

If an alien establishes membership in a particular social group and past persecution "on account of" membership in it, the burden shifts to the government to rebut the presumption of a well-founded fear of future persecution. **8 C.F.R. § 208.13(b)(1)(ii)**. The government can rebut this presumption by showing, by a preponderance of the evidence, a "fundamental change in circumstances" in the country so that the applicant no longer has a well-founded fear of persecution, or that "the applicant could avoid future persecution by relocating to another part of the country" and it would be reasonable to do so. **8 C.F.R. § 208.13(b)(1)(i)(A), (B), (b)(3)(ii)**. If an alien fails to meet the asylum requirement of a well-founded fear of

persecution, he or she generally cannot meet the higher standard needed to obtain withholding of removal or protection under the Convention Against Torture. *Al Yatim v. Mukasey*, 531 F.3d 584, 590 (8th Cir. 2008).

A.

Ngengwe sought asylum alleging a well-founded fear of persecution based on "membership in a particular social group." She defined the social group as any "widowed Cameroonian female member of the Bamileke tribe, in the Southern region that belongs to a family or has in-laws from a different tribe and region, the Bikom tribe in the Northwest province, who have falsely accused her of causing her husband's death." She also argued that she belongs to the broader social group of Cameroonian widows. The BIA, agreeing with the IJ, found that neither definition constituted a particular social group. This is a question of law reviewed de novo. *Gomez-Zuluaga v. Attorney General of the U.S.*, 527 F.3d 330, 339 (3d Cir. 2008).

"Particular social group" is an ambiguous phrase, not defined in the statute. This court gives *Chevron* deference to the BIA's reasonable interpretation of the phrase. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council Inc.*, 467 U.S. 837, 842-45 (1984); *Ahmed v. Ashcroft*, 396 F.3d 1011, 1014 (8th Cir. 2005). The BIA defined the phrase in *Matter of Acosta*, 19 I. & N. Dec. 211(BIA 1985), *overruled on other grounds by Matter of Mogharrabi*, 19 I. & N. Dec. 439 (BIA 1987). The BIA used the doctrine of *ejusdem generis* (general words used with specific words should be construed consistent with the specific words), comparing the term particular social group to the other enumerated grounds: race; religion; nationality; and political opinion. *Acosta*, 19 I. & N. at 233. The BIA determined that a particular social group must "share a common, immutable characteristic." *Id*. "The group characteristic must be one 'that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities and consciences.'"

***Davila-Mejia v. Mukasey***, 531 F.3d 624, 628 (8th Cir. 2008), *quoting **Acosta***, 19 I. & N. at 233. "The shared characteristic might be an innate one such as sex, color, or kinship ties, or in some circumstances it might be a shared past experience . . . ." ***Acosta***, 19 I. & N. at 233.

"Recently, in *In re C-A-*, 23 I. & N. Dec. 951 (BIA 2006), the BIA reaffirmed the *Acosta* test and provided further clarification regarding its proper application." ***Koudriachova v. Gonzales***, 490 F.3d 255, 261 (2d Cir. 2007). "*In re C-A-* reiterated that shared past experiences constitute an immutable characteristic because a past experience cannot be undone." ***Koudriachova***, 490 F.3d at 261, *citing **In re C-A-***, 23 I. & N. at 958. The "central" question is whether the applicant's status as a member of a particular social group is the reason for that individual's persecution. ***Koudriachova***, 490 F.3d at 261. Further, the BIA explained that *Acosta* does not require a "voluntary associational relationship" or "cohesiveness or homogeneity among group members." ***In re C-A-***, 23 I. & N. at 956-57. A group's visibility – the extent to which members of the applicant's society perceive those with the characteristics as members of a social group – is relevant. ***Koudriachova***, 490 F.3d at 261, *citing **In re C-A-***, 23 I. & N. at 957, 959-60.

The BIA determined that Ngengwe's first asserted social group – any widowed Cameroonian female member of the Bamileke tribe, in the Southern region that belongs to a family or has in-laws from a different tribe and region, the Bikom tribe in the Northwest province, who have falsely accused her of causing her husband's death – did not have a common immutable aspect shared by individuals of that group. It also rejected Ngengwe's second asserted social group – female, Cameroonian widows – for the same reason. The BIA was correct to reject the first asserted social group because Ngengwe's definition is too narrow; people with those characteristics are not perceived by society as a particular social group. *See **Davila-Mejia***, 531 F.3d at 628 (competing family business owners not a particular social group because not

perceived as a group by society); *In re C-A-*, 23 I. & N. at 959 (denying asylum where applicant's fear of persecution based upon factors more specific to the particular applicant than her status as a member of the particular social group). The BIA erred, however, in rejecting the second asserted social group – Cameroonian widows.

*Acosta* lists both gender (sex) and shared past experiences as examples of immutable characteristics. *Acosta*, 19 I. & N. at 233. Widows share the past experience of losing a husband - an experience that cannot be changed. The IJ found that although "marital status, perhaps, could be viewed as an immutable characteristic, in this case the respondent has the ability to change that characteristic." The BIA and IJ were incorrect in determining that female, Cameroonian widows do not share an immutable characteristic. *See* **Hassan**, 484 F.3d at 518 (all Somali females form a particular social group due to the prevalence of female genital mutilation); **Safie v. INS**, 25 F.3d 636, 640 (8th Cir. 1994) (stating that while "no factfinder could reasonably conclude that all Iranian women had a well-founded fear of persecution based solely on their gender," Iranian women who advocate women's rights or oppose Iranian customs relating to dress and behavior constitute a particular social group), *superseded by statute on other grounds, as recognized in* **Rife v. Ashcroft**, 374 F.3d 606, 614-15 (8th Cir. 2004); **Niang**, 422 F.3d at 1199-1200 (gender plus tribal membership meet requirements of particular social group); **Fatin v. INS**, 12 F.3d 1233, 1240 (3d Cir. 1993) ("[The requirement of wearing the chador or complying with Iran's . . . gender-specific laws would be [for certain women] so profoundly abhorrent that it could aptly be called persecution."). Female widows in Cameroon are viewed by society as members of a particular social group. *See* **Jonas N. Dah, Chieftaincy, Widowhood and Ngambi in Cameroon 11-25 (Pforzheim-Hohenwart 1995)** (describing the rituals and societal treatment of Cameroonian widows). The BIA "acknowledge[d] the pervasiveness in Cameroon of discrimination against women who survive their husbands."

B.

The BIA adopted the IJ's conclusion that Ngengwe failed to establish that she suffered at the hands of people that the Cameroonian government was unable or unwilling to control. A petitioner must show more than "difficulty . . . controlling" private actors in order to prove the government was unable or unwilling to control them. *Menjivar v. Gonzales*, 416 F.3d 918, 921 (8th Cir. 2005), *citing In re McMullen*, 17 I. & N. Dec. 542, 546 (BIA 1980). "Rather, the applicant must show that the government 'condoned it or at least demonstrated a complete helplessness to protect the victims.'" *Menjivar*, 416 F.3d at 921, *quoting Galina v. INS*, 213 F.3d 955, 958 (7th Cir. 2000).

This is a factual issue, to be upheld if supported by substantial evidence. *See Menjivar*, 416 F.3d at 921. "[I]n reviewing administrative fact findings we are required to take into account the record 'as a whole,' considering evidence that detracts from the administrative finding." *Chen v. Mukasey*, 510 F.3d 797, 801 (8th Cir. 2007), *citing Menendez-Donis*, 360 F.3d 915, 918 (8th Cir. 2004).

The evidence in the record includes the State Department Country Reports on Cameroon for the year 2001. The reports indicate that the "lack of a national legal code covering the family leaves women (especially in the North) defenseless against male-oriented customs." **Bureau of Democracy, Human Rights, and Labor, Country Reports on Human Rights Practices, Cameroon 21 (2001)**. Additionally, "the law does not impose effective penalties against men who commit acts of domestic violence," violence against women is "widespread," and customary law is "discriminatory against women." *Id*. at 20-21. The United Nations Commission on Human Rights states that in some African cultures, "old customs . . . provide scope and justification for male relatives to abuse the widow mentally, physically and sexually in the name of tradition." **U.N. Econ. & Soc. Council, Comm'n on Human Rights, Integration of the Human Rights of Women and the Gender Perspective:**

**Violence Against Women ¶ 64 (January 31, 2002)**. The United Nations Committee on Economic, Social, and Cultural Rights also "deplores . . . the continuing discriminatory practices against women and girls which impede the enjoyment of their rights . . . . includ[ing] polygamy, the forced early marriage of girls and discriminatory laws which prevent women from inheriting land." **U.N. Econ. & Soc. Council, Comm. on Econ., Soc., & Cultural Rights, Concluding Observations of the Committee on Economic, Social and Cultural Rights: Cameroon ¶¶ 14, 16 (December 8, 1999)**.

Although the IJ credited Ngengwe's testimony, he did not discuss her testimony that the police "do not do anything" for situations involving family members. The IJ did not "believe that respondent could not seek some type of protection from the government of Cameroon," citing only the fact that Ngengwe did not contact the police. The IJ did not mention the affidavit of Ngengwe's relative stating that when her sister, Victorine, was attacked and beaten by her family after the death of her cousin, the police refused to stop the beating because it was "a family issue."

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Menendez-Donis v. Ashcroft*, 360 F.3d 915, 919 (8th Cir. 2004), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). An IJ must identify a basis in the record for disbelieving a witness's testimony; it cannot be based on bald speculation. *Singh v. Gonzales*, 495 F.3d 553, 557 (8th Cir. 2007), *citing Zhang v. INS*, 386 F.3d 66, 74 (2d Cir. 2004). Given the evidence in the record that the Cameroonian government would not protect Ngengwe from her in-laws, this court finds no substantial evidence to uphold the IJ's and BIA's decision. *See In re S-A-*, 22 I. & N. Dec. 1328, 1335 (relying on testimony and country reports that seeking police assistance would be futile, applicant met "unable or unwilling to control" requirement even though she did not report abuse to police). *Cf. Makatengkeng v. Gonzales*, 495 F.3d 876, 885 (8th Cir. 2007) (upholding BIA's decision because there

was no evidence in the record that the Indonesian government was unable or unwilling to control those harassing the applicant); *Valioukevitch v. INS*, 251 F.3d 747, 749 (8th Cir. 2001) (upholding IJ and BIA decision because State Department Reports indicated that Belarussian government respects its citizens' guarantee of religious freedom).

C.

The BIA also determined that Ngengwe's "mistreatment by her relatives, while deplorable, did not rise to the level of [past] persecution." To overcome the BIA's finding that she did not suffer past persecution, Ngengwe "must show that the evidence [s]he presented was so compelling that no reasonable fact finder could fail to find the requisite fear of persecution." *Valioukevitch*, 251 F.3d at 749.

Persecution is a "broader concept than threats to life or freedom." *INS v. Stevic*, 467 U.S. 407, 428 n.22 (1984). "The harm or suffering need not [only] be physical, but may take other forms, such as the deliberate imposition of severe economic disadvantage or the deprivation of liberty, food, housing, employment or other essentials of life." *In re T-Z*, 24 I. & N. Dec. 163, 171 (BIA 2007) (alteration in original) (italics omitted), *quoting* **H.R. Rep. No. 95-1452, at 5,** *as reprinted in* **1978 U.S.C.C.A.N. 4700, 4704**. In some cases, an applicant may be able to show a well-founded fear of persecution on "cumulative grounds." *Poradisova v. Gonzales*, 420 F.3d 70, 79-80 (2d Cir. 2005); *In re O-Z & I-Z-*, 22 I. & N. Dec. 23, 25-26 (BIA 1998) (beatings, vandalism, and threats, in the aggregate, rise to the level of persecution). Persecution excludes "low-level intimidation and harassment." *Al Yatim*, 531 F.3d at 587, *quoting* *Shoaira v. Ashcroft*, 377 F.3d 837, 844 (8th Cir. 2004).

The BIA cites to the IJ's decision, which analyzed mostly the physical harm Ngengwe suffered. The IJ determined that "this mourning tradition that she was required to undergo" did not constitute "serious harm or suffering," and the injuries

-10-

inflicted by her in-laws were "not severe or prolonged." If the physical abuse Ngengwe suffered were the only evidence of persecution, there would be substantial evidence to support this determination. *See Setiadi v. Gonzales*, 437 F.3d 710, 713 (8th Cir. 2006) ("Even minor beatings or limited detentions do not usually rise to the level of past persecution."). However, Ngengwe put forth additional evidence of persecution.

The IJ concluded that Ngengwe did not suffer persecution "when her relatives or in-laws confronted her in her sister's village" and "demanded that she either marry [her brother-in-law], or pay back the 'bride's price.'" The question of whether forced marriage constitutes persecution is an open issue. *See Gao v. Gonzales*, 440 F.3d 62, 70 (2d Cir. 2006) (calling "lifelong, involuntary marriage" persecution), *vacated on procedural grounds by Keisler v. Gao*, 128 S. Ct. 345 (2007). The IJ offered no analysis, and cited no law, on why the choice between forced marriage, death, or paying an unaffordable bride's price does not constitute persecution. "Also troubling is the IJ's apparent (and erroneous) technique of addressing the severity of each event in isolation, without considering its cumulative significance." *Poradisova*, 420 F.3d at 79.

The IJ did not consider Ngengwe's argument that her in-laws confiscated all of her property, and threatened to take her children. This, too, is related to whether non-physical persecution occurred. *See Beck v. Mukasey*, 527 F.3d 737, 740-41 (8th Cir. 2008) (finding that persecution by "severe economic deprivation" is a standard "consistent with many prior decisions of this court"); *In re T-Z*, 24 I. & N. at 171 ("[T]here may be situations in which, for example, an extraordinarily severe fine or wholesale seizure of assets may be so severe as to amount to persecution, even though the basic necessities of life might still be attainable.").

Because the non-physical actions of Ngengwe's in-laws were not fully considered by the IJ or BIA, this case is remanded to the BIA to determine in the first instance, whether the combination of all the actions constitutes past persecution. *See*

-11-

*Gonzales v. Thomas*, 547 U.S. 183, 186 (2006) (per curiam) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."), *quoting **INS v. Orlando Ventura***, 537 U.S. 12, 16 (2002) (per curiam).

### D.

The IJ determined that even if Ngengwe suffered past persecution and was a member of a particular social group, the persecution was not "on account of" her membership in the group. The BIA did not address the "on account of" issue, therefore this court cannot consider it. ***Fofanah***, 447 F.3d at 1040 ("Because the BIA did not consider the IJ's alternative grounds for denying relief, those are not properly before us."). This issue is remanded to the BIA. *See **Thomas***, 547 U.S. at 186.

### E.

The BIA concluded that Ngengwe failed to establish a well-founded fear of future persecution. *See **Al Tawm v. Ashcroft***, 363 F.3d 740, 743 (8th Cir. 2004) (*citing **Francois v. INS***, 283 F.3d 926, 930 (8th Cir. 2002)) ("If an asylum-seeker fails to demonstrate past persecution, he must independently establish a well-founded fear of future persecution, based on both objective and subjective elements."). With respect to the subjective burden, the BIA concluded that based upon her credible testimony, Ngengwe "may have a subjective fear of her in-laws." *See **Francois***, 283 F.3d at 930 ("An alien may establish the subjective element with credible testimony that he or she genuinely fears persecution.").

To satisfy the objective burden, an asylum-seeker "must provide credible, specific evidence that a reasonable person in his position would fear persecution if returned." ***Id.*** Adopting the IJ's conclusion, the BIA determined that Ngengwe failed her objective burden because: (1) she "made no attempt" to pay back the bride's price – an undisputed fact – and (2) she "could send money to her in-law's family to

-12-

alleviate any possible threat that she might face." The standard is whether no reasonable factfinder could "fail to find the requisite fear of persecution." ***Vonhm v. Gonzales***, 454 F.3d 825, 828 (8th Cir. 2006), *citing **INS v. Elias-Zacarias***, 502 U.S. 478, 483-84 (1992).

The IJ found Ngengwe credible. She testified that even if she could pay the bride's price with the money she earned in the United States, she did not trust her in-laws to "leave [her] alone" because they "still blame[d]" her for her husband's death, and threatened to "kill" and "beat" her. On this record, the only evidence indicates that paying the bride's price does not negate any significant threat to Ngengwe. *See **United States v. Santos-Vanegas***, 878 F.2d 247, 252 (8th Cir. 1989), *citing **INS v. Cardoza-Fonseca***, 480 U.S. 421, 431 (1987) (stating that a well-founded fear of persecution would exist where every tenth adult male person is either put to death or sent to a remote labor camp). An IJ must identify a basis in the record for disbelieving a witness's testimony; it cannot be based on bald speculation. ***Singh v. Gonzales***, 495 F.3d 553, 557 (8th Cir. 2007). This case is remanded to the BIA to determine whether Ngengwe has a reasonably objective basis to fear future persecution.

## III.

The petition for review is granted. The applications for asylum, withholding of removal, and protection under the Convention Against Torture are remanded to the BIA for further proceedings consistent with this opinion.

_____