# United States Court of Appeals

### For the Eighth Circuit

_____

No. 17-1865

_____

Evelyn Areceli Hernandez-Guillen

*Petitioner*

v.

Jefferson B. Sessions, III,
United States Attorney General,

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: April 13, 2018
Filed: June 1, 2018
[Unpublished]

_____

Before GRUENDER, BENTON, and GRASZ, Circuit Judges.

_____

PER CURIAM.

Evelyn Areceli Hernandez-Guillen ("Hernandez"), a citizen of El Salvador, petitions for review of an order of the Board of Immigration Appeals (the "Board"). An immigration judge ("IJ") denied her application for withholding of removal, and the Board affirmed, ordering her removal.

In 2005, Hernandez was detained for illegally entering the United States near Brownsville, Texas. Officials charged her as removable and served her with a notice to appear before an IJ at a date to be set later. Because it was unable to detain Hernandez for a longer term due to lack of camp space, the Border Patrol released her with instructions to provide an address to the Immigration Court in Harlingen, Texas. Hernandez failed to provide an address to the Immigration Court, and a month later an IJ ordered her removed *in absentia*.

In 2011, Hernandez was convicted in a Minnesota state court of being an accessory after the fact to arson. United States Immigration and Customs Enforcement placed her under an Order of Supervision. In 2012, Hernandez filed an application for asylum and withholding of removal. She attached an affidavit explaining that she feared harm from her ex-husband should she return to El Salvador. In written pleadings, Hernandez corrected her home country from Honduras to El Salvador but otherwise admitted the factual allegations and charge contained in the 2005 notice to appear. She also subsequently narrowed her requested relief to withholding of removal alone.

At a hearing on February 22, 2016, Hernandez described three instances where she alleged her ex-husband slapped her in the face, with the first instance occurring only three months after they were married. The third time, he injured her eye with his finger, and her eye became bloody and swollen for several days. She told her parents about the abuse after the second incident, but she never told the police. She explained that she did not believe the police would help her because she heard about an incident five years prior where her uncle hit her aunt, her aunt told the police, and the police did nothing.

Hernandez testified that she fled to the United States and, after about a year, decided that she wanted a divorce. She further testified that the only contact with her ex-husband since she fled and decided to divorce him occurred in the United States,

when he gave her and a friend a ride home from work. He allegedly crashed into three cars while driving in the snow, and then ran away. After about seven years of attempts, her lawyer obtained the divorce and Hernandez received sole physical and legal custody of their son. Her son resides with her parents in El Salvador, and he has not had contact with his father since living with her parents. Hernandez is currently re-married to a man in the United States, with whom she has one daughter. She continues to fear harm from her ex-husband should she return to El Salvador.

"An alien is eligible for withholding of removal upon showing a clear probability that his 'life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion.'" *Quinonez-Perez v. Holder*, 635 F.3d 342, 345 (8th Cir. 2011) (quoting 8 U.S.C. § 1231(b)(3)(A)). "The clear probability standard for withholding of removal is more onerous than the well-founded fear standard for asylum." *Malonga v. Mukasey*, 546 F.3d 546, 551 (8th Cir. 2008).

The IJ found Hernandez generally credible but denied the application for withholding of removal, finding that the slapping incidents did not rise to the level of past persecution based on one of the five protected grounds. The IJ noted that neither Hernandez nor her parents reported the incidents to the police, and the IJ discounted the story about Hernandez's aunt because it was a single incident occurring at least five years before Hernandez was married. The IJ also found that Hernandez failed to prove a clear probability of future persecution because she divorced her ex-husband and obtained sole custody of their son, indicating that she could obtain protection from the Salvadoran government. Thus, the IJ denied the application on the basis that Hernandez failed to meet her burden of proof. The Board agreed, finding Hernandez did not establish that the Salvadoran government was unable or unwilling to control her ex-husband. Hernandez argues on appeal that the Board's findings impermissibly differed from the IJ's findings and that the Board's analysis is not supported by the evidence.

We review the Board's decision for substantial evidence on the record as a whole. *Saldana v. Lynch*, 820 F.3d 970, 974 (8th Cir. 2016). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). "To the extent . . . that the [Board] adopted the findings or the reasoning of the IJ, we also review the IJ's decision as part of the final agency action." *Falaja v. Gonzales*, 418 F.3d 889, 894 (8th Cir. 2005).

Hernandez's argument that the Board's findings differ from the IJ's findings misreads the IJ's decision. It is true the IJ stated in its oral decision "the Court would find . . . that such persecution was either by the government or by someone that the government was unwilling or unable to control." The IJ then proceeded to discuss evidence that persecution was *not* by the government or someone that the government was unwilling or unable to control. It is evident from the context the IJ's initial statement was simply a misstatement and that the IJ ultimately found against Hernandez on that issue. Thus, the Board did not err in stating the IJ found that "the respondent did not establish that the Salvadoran government was unable or unwilling to control her ex-husband."

Substantial evidence also supports the Board's finding that Hernandez failed to show a clear probability the Salvadoran government was unable or unwilling to control her ex-husband. Hernandez's argument is based on her belief that Salvadoran police would not assist her with her ex-husband. "[T]he fact that police take no action on a particular report does not necessarily mean that the government is unwilling or unable to control criminal activity, because there may be a reasonable basis for inaction." *Menjivar v. Gonzales*, 416 F.3d 918, 921 (8th Cir. 2005). While an IJ may not baldly disbelieve a witness's testimony about whether the government will help, *see Ngengwe v. Mukasey*, 543 F.3d 1029, 1035–36 (8th Cir. 2008), an IJ may disbelieve testimony based on facts in the record, *see Salman v. Holder*, 687 F.3d

-4-

991, 995 (8th Cir. 2012). Here, the IJ and the Board relied on facts in the record in their rejection of Hernandez's testimony regarding Salvadoran police.

We reject Hernandez's contention that our decision in *Ngengwe*, where we reversed an order denying asylum to an alien who feared police would not act, controls the outcome here. The alien in *Ngengwe* only bore the lesser asylum burden of proving a well-founded fear, *see Ngengwe*, 543 F.3d at 1032–33, while Hernandez needs to prove a clear probability of persecution for withholding of removal. *Ngengwe* is also distinguishable because the IJ in *Ngengwe* failed to address all of the testimony in the record, *see id.* at 1035, while the IJ in this case gave specific reasons to reject the relevant testimony. For example, the IJ here concluded the aunt's one story did not represent how Salvadoran police would act in Hernandez's circumstances because the story was an isolated instance that occurred five years before Hernandez was married. The IJ and the Board also did not believe Hernandez proved a clear probability of future persecution because Hernandez is now divorced from her ex-husband, and there was no evidence he had interacted with her or her son since the divorce. The IJ and the Board reasonably concluded that Hernandez's evidence did not meet her burden of proof, and no contrary conclusion is compelled here.

We deny the petition for review.

_____